# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | Case No. 2:14-cv-04410-KM-MAH |
| Plaintiffs, | |
| v. | |
| BECTON DICKINSON AND COMPANY, | Motion Day: Jan. 5, 2015 |
| Defendant. | |

**BRIEF IN SUPPORT OF TRAVELERS CASUALTY AND SURETY COMPANY'S AND TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ..................................................................................................... 2

      I.      The Class Action Lawsuits. ................................................................ 2

      II.     The Retractable Action. ....................................................................... 2

      III.    The Insurance Contracts. ..................................................................... 3

      IV.    Tender Of The Class Action Lawsuits. .............................................. 5

      V.     Tender Of The Retractable Lawsuits. ................................................. 6

ARGUMENT ........................................................................................................... 6

      I.      Standard Of Review And Choice Of Law. ......................................... 6

      II.     Becton's Breach Of The Notice Requirements Entitles Travelers To Judgment. ........................................................................................ 7

            A.     Becton's Breach Precludes Coverage Irrespective Of "Appreciable Prejudice." ............................................................. 7

            B.     Travelers Has Been "Appreciably Prejudiced" By Becton's Breach of the Policies' Notice Provisions. .......................... 18

      III.    Becton's Breach of the Cooperation and Voluntary Payments Provisions Entitles Travelers to Judgment. ..................................... 24

      IV.    The Policies' No Action Clause Bars Coverage. ............................. 27

      V.     New Jersey Law Precludes Becton's Recovery of Pre-Notice Expenses. .......... 29

CONCLUSION ...................................................................................................... 30

i

## TABLE OF AUTHORITIES

Page(s)

CASES

Bacon v. Am. Ins. Co.,
  131 N.J. Super. 450 (Law Div. 1974),
  aff'd, 138 N.J. Super. 550 (App. Div. 1976)....................................................27, 29

In re Bayside Prison Litig.,
  190 F. Supp. 2d 755 (D.N.J. 2002) ...........................................................................7

Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.,
  179 N.J. 87 (2004)....................................................................................................14

British Ins. Co. of Cayman v. Safety Nat. Cas.,
  335 F.3d 205 (3d Cir. 2003) ....................................................................................15

Century Indem. Co. v. Mine Safety Appliances Co.,
  398 N.J. Super. 422 (App. Div. 2008).......................................................................7

Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,
  817 F. Supp. 1136 (D.N.J. 1993), aff'd in part and remanded, 89 F.3d 976 (3d Cir.
  1996)..........................................................................................................................30

Cooper v. Gov't Employees Ins. Co.,
  51 N.J. 86 (1968).............................................................................................passim

DeMasi v. Lexington Ins. Co.,
  A-3206-08T3, 2010 WL 3075674 (N.J. Super. Ct. App. Div. July 23, 2010) ...............passim

Ethicon, Inc. v. Aetna Cas. and Sur. Co.,
  805 F. Supp. 203 (S.D.N.Y. 1992), aff'd without opinion, 993 F.2d 1532 (2d Cir.
  1993)......................................................................................................... 12, 23, 24

Federal Ins. Co. v. Purex Industries, Inc.,
  942 F. Supp. 872 (D.N.J. 1997) ..............................................................................16

Figueroa v. Puter,
  84 N.J. Super. 349 (App. Div. 1964).......................................................................12

Gazis v. Miller,
  186 N.J. 224 (2006).........................................................................................passim

Gen. Ceramics Inc. v. Firemen's Fund Ins. Cos,
  66 F.3d 647 (3d Cir. 1995) .......................................................................................7

ii

## TABLE OF AUTHORITIES
(continued)

Page

Hager v. Gonsalves,
  398 N.J. Super. 529 (App. Div. 2008), certif. denied sub nom., High Point Ins. Co. v.
  Rutgers Cas. Ins. Co., 195 N.J. 522 (2008) ................................................................ *passim*

Harrisburg Area Comm. College v. Pacific Emp. Ins. Co.,
  682 F. Supp. 805 (M.D. Pa. 1988) ........................................................................... 24

Martin v. Fireman's Fund Ins. Co.,
  No. L–287–09, 2011 WL 1584333 (N.J. App. Div. March 16, 2011) ................ 10, 20, 21, 22

Morales v. National Grange Mut. Ins. Co.,
  176 N.J. Super. 347 (Law Div. 1980) ........................................................................ 19

New Jersey Eye Ctr., P.A. v. Princeton Ins. Co.,
  394 N.J. Super. 557 (App. Div. 2007) ................................................................. 18, 25, 26

Ohaus v. Continental Cas. Ins. Co.,
  292 N.J. Super. 501 (App. Div. 1996) ........................................................................ 17, 26

Palkimas v. State Farm Fire & Cas. Co.,
  150 Conn. App. 655 (2014) ........................................................................................ 24

Perini/Tompkins Joint Venture v. Ace American Ins. Co.,
  738 F.3d 95 (4th Cir. 2013) ............................................................................ 22, 23, 24, 27

Permasteelisa CS Corp. v. Columbia Cas. Co.,
  377 F. App'x 260 (3d Cir. 2010) ................................................................................ 28

Peskin v. Liberty Mutual Ins. Co.,
  219 N.J. Super. 479 (App. Div. 1987) ........................................................................ 13, 22

Prince George's County v. Local Gov't Ins. Trust,
  879 A.2d 81 (Md. Ct. App. 2005) ............................................................................... 22, 23

Sagendorf v. Selective Ins. Co. of Am.,
  293 N.J. Super. 81 (App. Div. 1996) .......................................................................... 19

Sauer v. Preserver Ins. Grp.,
  A-6134-08T1, 2010 WL 2560035 (N.J. Super. Ct. App. Div. May 27, 2010) ..... 13, 20, 21, 22

Skirica v. Nationwide Ins. Co.,
  416 F.3d 214 (3d Cir. 2005) ........................................................................................ 7

SL Indus., Inc. v. Am. Motorists Ins. Co.,
  128 N.J. 188 (1992) ............................................................................................... 29, 30

# TABLE OF AUTHORITIES

(continued)

Page

Solvents Recovery Serv. of New England v. Midland Ins. Co.,
  218 N.J. Super. 49 (App. Div. 1987)..........................................................................16

Twp. of Irvington v. Coregis Ins. Co.,
  A-2434-08T3, 2010 WL 1330022 (N.J. Super. Ct. App. Div. Apr. 7, 2010)........................12

Zuckerman v. Nat'l Union Fire Ins. Co.,
  100 N.J. 304 (1985).......................................................................................17

**STATUTES, RULES & REGULATIONS**

New Jersey Court Rule 2:11-3.................................................................................21

Fed. R. Civ. P. 12(c)....................................................................................6, 7

iv

## PRELIMINARY STATEMENT

Becton Dickinson and Company ("Becton") seeks coverage from Travelers Casualty and Surety Company (f/k/a Aetna Casualty and Surety Company) ("TCSC") and Travelers Property Casualty Company of America (f/k/a The Travelers Indemnity Company of Illinois) ("TPCC") (collectively, "Travelers") for a series of lawsuits alleging, in essence, anticompetitive conduct. The most recent of these lawsuits, however, was filed over a half-decade ago, and all of them were settled before Becton provided any notice to Travelers (the oldest, nearly ten years before). Becton's egregious breach of numerous terms of the subject insurance contracts precludes coverage for these matters, and Travelers now seeks judgment on the pleadings to that effect.

Becton has made no attempt to explain its breaches, and does not posit any justification for failing to even inform Travelers that it was settling multi-million dollar commercial lawsuits, let alone seek Travelers' participation. Instead, Becton now pursues over one hundred and fifty million dollars in indemnity costs (plus some undisclosed amount of defense costs) from Travelers -- almost as an afterthought. This ex post facto attempt to deprive an insurance carrier of its contractual right to evaluate coverage and participate in defense and settlement is expressly prohibited by the policies. Becton has failed to comply with the terms of the insurance contracts in spectacular fashion. The severity of these blatant, inexplicable breaches indicate an absence of good faith on Becton's part, and is alone sufficient to sustain judgment in favor of Travelers, but the nature of this conduct has also prejudiced Travelers. Travelers should be granted judgment on this basis.

Setting aside Becton's breaches, moreover, established New Jersey law also precludes Becton from seeking coverage for its pre-notice defense expenses as an insurer cannot be forced to assume responsibility for a defense it could never have controlled. The policies also prevent Becton from seeking indemnity coverage from Travelers without judgment having been entered

1

against it following trial, or a settlement to which Travelers agreed.  In short, Becton cannot force Travelers to foot the bill for decisions it made without bothering to involve Travelers.

## BACKGROUND

### I.     The Class Action Lawsuits.

Becton was named as a defendant in five class action lawsuits filed in 2005 on behalf of distributors and other direct purchasers of Becton's hypodermic products (the "Distributor Plaintiffs"). They alleged that Becton engaged in conduct violative of federal antitrust laws that resulted in inflated prices for its products, and claimed that Becton had illegally acquired a monopoly over the sale of various hypodermic products by, among other things, imposing market share purchase requirements on hospitals and entering exclusionary contracts. (Amended Complaint  ("Compl.") ¶¶13, 14)  In April 2009, Becton settled with the Distributor Plaintiffs, agreeing to pay $45 million for a release of the direct purchaser claims and dismissal of the claims with prejudice. (Id. ¶17)

Becton was also named as a defendant in four class action suits initiated between 2005 and 2007 and brought on behalf of indirect purchasers of Becton's hypodermic products, such as hospitals and retailers (the "Hospital Plaintiffs").  (Id. ¶18)  The Hospital Plaintiffs claimed Becton had illegally and used acquired monopoly power over hypodermic products.  (Id. ¶20) In July 2013, Becton settled with the Hospital Plaintiffs, agreeing to pay $22 million into a fund for a release and a dismissal of the case with prejudice. (Id. ¶22)[1]

### II.    The Retractable Action.

On August 3, 1998, a state court action was commenced by Retractable Technologies against Becton and other defendants.  (Compl. ¶24)  It was dismissed without prejudice, but in January 2001, Retractable commenced a federal court action against Becton and other

---

[1] The foregoing suits are referred to as "Class Action Lawsuits," and the settlements as "Class Action Settlements."

defendants. (Id. ¶28)[2]  The Third Amended Complaint in the Federal Action explained that the lawsuit concerned the sale of hypodermic products, alleging generally that the defendants conspired to create a monopoly, tortuously interfered with plaintiffs' contracts, and disparaged the plaintiffs.  (Id. ¶¶29, 30)  On July 2, 2004, Becton and Retractable executed a Settlement Agreement and Release ("Retractable Settlement") which provided that Becton would pay $100 million to Retractable and the Federal Action would be dismissed with prejudice.  (Id. ¶32)

## III.   The Insurance Contracts.

TCSC issued policies to Becton for annual periods beginning on October 1, 1978 and ending October 1, 1988.  (Certification of Mark A. Sadler ("Cert.") ¶2)  Unless noted below, the relevant terms of the TCSC Policies are materially similar.  They provide coverage for "all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury or property damage . . . ."  (Cert., Ex. A)  They also provide coverage for "all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury. . . ."  (Id.)   For those coverages, the TCSC Policies provide that the "company shall have the right and duty to defend any suit against the insured seeking [covered] damages . . . even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. . . ." (Id.)

The TCSC Policies also contain conditions defining Becton's obligations in the event of an "Occurrence, Claim or Suit."  (Cert., Ex. B)  The TCSC Policies in effect before October 1, 1986 require that written notice of an "occurrence" "shall be given . . . as soon as practicable after notice thereof has been received by the director of corporate risk, Becton Dickinson & Company, Paramus, New Jersey."  (Cert., Ex. C) The remaining TCSC Policies provide that such "written notice" "shall be given as soon as practicable after knowledge of the occurrence, injury,

---

[2] The Retractable state and federal court actions are referred to as the "State Action" and "Federal Action," respectively. Collectively, they are referred to as the "Retractable Lawsuits."

or damage has been reported to an executive officer of the named insured or to the employee designated by the named insured to give such notice." (Cert., Ex. E)  The TCSC Policies require that, in the event of a claim or suit, "the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."  (Cert., Ex. B) Moreover, the TCSC Policies provide that the insured "shall cooperate with the company and, upon the company's request, assist in making settlement, in the conduct of suits and in enforcing any right of contribution or indemnity . . . The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense . . . ." (Id.)  The TCSC Policies additionally state:

> No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

(Id.)

TPCC issued policies to Becton for annual periods beginning October 1, 1988 and ending October 1, 1999 (the "TPCC Policies").  (Cert. ¶3)  Except where noted below, the relevant terms of the TPCC Policies are materially similar.  They provide the coverage for "sums that the insured becomes legally obligated to pay as damages" because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which the insurance applies.  (Cert., Ex. E) For those coverages, the TPCC Policies provide that Travelers "will have the right and duty to defend the insured against any 'suit' seeking those damages. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' . . . ." (Cert., Ex. E)

The TPCC Policies also provide that in the event of an occurrence or offense, the insured "must see to it that we are notified as soon as practicable . . .," and that in the event of a claim or

4

suit, the insured "must see to it that we receive written notice . . . as soon as practicable."[3] (Cert., Ex. F) The TPCC Policies further require that the insured must "immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit,'" and "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit.'" (Id.)   Those policies state that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense . . . without our consent." (Id.)   Certain endorsements also specify whose knowledge is relevant for purposes of the insured's obligation to provide notice of an occurrence, providing, for example, that "knowledge of an occurrence by the agent, servant or employee of yours shall not in itself constitute knowledge by you, unless the Becton Dickinson & Company Insurance Department shall have received such notice." (Cert., Ex. H, I).  In addition, the TPCC Policies provide:

> No person or organization has a right under this Coverage Part:
> a.  To join us as a party or otherwise bring us into a suit asking for damages from an insured; or
> b.  To sue us on this Coverage Part unless all of its terms have been fully complied with.
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

(Cert., Ex. F)  Collectively, the TCSC and TPCC Policies are referred to as the "Policies."

## IV.   Tender Of The Class Action Lawsuits.

Becton first notified Travelers of the Class Action Lawsuits by letter dated December 27, 2013, more than eight years after their commencement.  (Id. ¶52)  Becton informed Travelers that it had settled the suits in 2009 and 2013 and demanded that it be reimbursed for defense costs and indemnified for the Class Action Settlements.  (Id. ¶53) Prior to December 27, 2013,

---

[3] The TPCC Policies in effect prior to October 1, 1991 provide that notice must be "prompt" or given "promptly" rather than "as soon as practicable." (Cert., Ex. G)

Becton gave no indication to Travelers of the existence of the Class Action Lawsuits, nor that it intended to seek coverage for the Class Action Lawsuits and the Class Action Settlements.

In a March 10, 2014 letter, Travelers informed Becton that there was no coverage for the Class Action Lawsuits or the Class Action Settlements under any of the Policies.  (Id. ¶56)  On March 17, 2014, counsel for Becton responded, contending that the conduct alleged in the Class Action Lawsuits constituted an "advertising injury" offense under the TCSC Policies.  (Id. ¶57)

On March 28, 2014, Travelers agreed to provide a defense under the TCSC Policy in effect from October 1, 1987 to October 1, 1988, subject to a reservation of Travelers' rights and defenses under the Policies and applicable law.  (Id. ¶58)  Travelers proposed to pay reasonable and necessary attorneys' fees and costs incurred by Becton in defending the Class Action Lawsuits from December 27, 2013, the date of Becton's tender, forward.  (Id. ¶59)  Becton advised Travelers that it had incurred no such fees or costs after December 27, 2013.  (Id. ¶60)

## V.      Tender Of The Retractable Lawsuits.

In June 2014, more than fifteen years after the commencement of the Retractable State Action and nearly ten years after the July 2004 Retractable Settlement, Becton first notified Travelers of the Retractable Lawsuits. (Compl. ¶61)  Becton's tender sought the defense and settlement costs of the Retractable Lawsuits under policies issued to Becton from October 1, 1993 to October 1, 1999.  (Id. ¶62) Travelers declined coverage for the Retractable Lawsuits in a July 18, 2014 letter, and filed its Amended Complaint in this action the same day.

## ARGUMENT

## I.      Standard Of Review And Choice Of Law.

In a Rule 12(c) motion, the court reviews the "facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Skirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).  In addition to the pleadings, a court may

also consider: "(1) matters attached to the complaint; . . . (2) matters incorporated into the pleadings by reference; . . . and (4) matters integral to or upon which plaintiff's claim is based." In re Bayside Prison Litig., 190 F. Supp. 2d 755, 760 (D.N.J. 2002) (citations omitted). Judgment will be granted if the movant establishes "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Skirica, 416 F.3d at 220.

Federal courts sitting in diversity apply the choice-of-law rules of the forum state. Gen. Ceramics Inc. v. Firemen's Fund Ins. Cos, 66 F.3d 647, 652 (3d Cir. 1995). In New Jersey, in the absence of other compelling factors dictating a stronger interest in another state, the "law of the place of the contracting applies." Century Indem. Co. v. Mine Safety Appliances Co., 398 N.J. Super. 422, 437 (App. Div. 2008). Here, the contracts were issued in New Jersey to Becton, a New Jersey insured, and New Jersey law therefore applies. Id.

## II.   Becton's Breach Of The Notice Requirements Entitles Travelers To Judgment.

### A.   Becton's Breach Precludes Coverage Irrespective Of "Appreciable Prejudice."

Under New Jersey law, insurance policy notice conditions are enforceable, and violations of such conditions can void coverage. See Cooper v. Gov't Employees Ins. Co., 51 N.J. 86, 90 (1968). The New Jersey Supreme Court has held that, under certain circumstances, such a violation will void coverage only if the insurer demonstrates "both a breach of the notice provision and a likelihood of appreciable prejudice." Id. at 94; see also Gazis v. Miller, 186 N.J. 224 (2006). Importantly, though, this "appreciable prejudice" concept -- adopted by the Court in its seminal Cooper decision -- does not apply in all cases. Gazis, 186 N.J. at 232.

Cooper involved a two-car automobile accident where the impact was slight and neither car was damaged. 51 N.J. at 90. The claimant, a friend of the insured and passenger in the insured's car, complained of only minor injuries shortly after the accident and did not mention the injuries again for some two years. Id. The claimant then sued the driver of the other car as

well as the insured, but the insured gave notice to her insurer only after being served with the suit, explaining that it had not occurred to her before then that anyone thought her culpable for the accident or that a claim would be brought.  Id.  Indeed, the claimant had expressed surprise that her lawyer had even included the insured as a defendant.  Id.

The trial court in Cooper found the insured acted reasonably in not giving earlier notice, but the Appellate Division reversed.  Id. at 91.  On review of that decision, the New Jersey Supreme Court examined "what role prejudice may play in this area."  Id.  The Court reasoned:

> [W]e have recognized that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read or understood them, and hence an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as its language will permit. . . .

Id. at 93 (citations omitted).  According to the Court, finding a forfeiture of coverage where there was no likelihood the insurer was prejudiced "would be unfair to insureds."  Id. at 94.

The Court explained that its decision was shaped by public policy favoring compensation of accident victims.  Id. at 94.  It opined that forfeiting coverage without showing prejudice would "disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated. . . . We should therefore be mindful also of the victims of accidental events in deciding whether a forfeiture should be upheld."  Id.  The Court held:

> The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice.  The burden of persuasion is the carrier's.

Id. (footnote omitted).  As to the facts before it, the Court found that an insured does not forfeit coverage for late notice where he "reasonably and in good faith believes no claim against him is contemplated either because the damage is trivial or because there is no suggestion in the circumstances that he is causally involved. This accords with the reasonable expectation of the

parties to the insurance arrangement." Id. at 90.  The Court clarified, though:  "This does not mean that an insured, conscious of a possibility of a claim, may omit to report the accident upon the ground that in his opinion the claim is without merit . . . .  Obviously an insured may not assume the role of judge and jury." Id.

Since Cooper, the New Jersey Supreme Court has been clear that "appreciable prejudice" is not a blanket rule to be applied in all late-notice scenarios.  See Gazis, 186 N.J. at 231-32.  In Gazis, the Court examined whether the rule was appropriately applied to an excess automobile liability insurer.  Id. at 230-231.  While the Court ultimately determined to require an "appreciable prejudice" showing in that context, it did so only after a detailed analysis that led it to the conclusion that the case before it "present[ed] circumstances close enough to those in Cooper to justify its extension." Id. at 231.

Gazis involved an Archdiocese's breach of a 120-day notice provision in an excess policy following an accident in which a priest's car struck a pedestrian.  Id. at 226.  Notice was given to the excess insurer a year-and-a-half after the accident in question, but prior to suit being filed by the injured pedestrian.  Id.  In evaluating whether an "appreciable prejudice" showing would be required for the insurer's late-notice defense to coverage, the Court began by emphasizing:

> At bottom, we are concerned here with liability insurance coverage for an automobile accident victim, notwithstanding that this coverage is excess of the insured's primary policy.  We approach the coverage question in these circumstances mindful of the strong and overarching public policy that led to the omnibus liability coverage statute governing every owner of a motor vehicle registered in New Jersey.

Id. at 231 (citations omitted).  The Court added that "application of Cooper's prejudice requirement" in the case before it furthered "the public policy of this State in favor of protecting automobile accident victims, notwithstanding technically late notice."  Indeed, it emphasized that "the important consideration was whether compensation under the liability policy, albeit for excess coverage, would be available to cover a claim based on injuries to an automobile accident

9

victim.  That it was excess did not, and should not alter the relevant analysis."  Id.

Critical for present purposes, the Gazis Court concluded with a cautionary note: the Cooper "appreciable prejudice" rule is not to be applied automatically in every late notice scenario.  Id. at 232-33.  That is, although "when recompense for an accident victim's injuries is in the balance, the correctness of [requiring a showing "appreciable prejudice"] is manifest," the Court emphasized that this should not "suggest that every notice provision in an insurance setting can be disregarded in favor of an 'appreciable prejudice' requirement."  Id. at 233.

Gazis thus teaches that while the "appreciable prejudice" rule is appropriately applied to scenarios in which compensation of tort victims is the paramount concern, such as automobile accidents, it is not universally applicable.  See id. at 235 (Rivera-Soto, dissenting) (noting that majority in Gazis placed "exclusive reliance on the public policy favoring recovery for tort victims").  Rather, the circumstances of the particular case must be "close enough to those in Cooper to justify" the rule's application.  Gazis, 186 N.J. at 231; see also Martin v. Fireman's Fund Ins. Co., No. L–287–09, 2011 WL 1584333, at *3 (N.J. App. Div. March 16, 2011) (citing Gazis for proposition that "appreciable prejudice" "is considered the appropriate standard whenever breach of a prompt notice requirement without more would prevent an injured insured from recovering anticipated benefits" from uninsured motorist coverage).

The Appellate Division's decision in Hager v. Gonsalves, 398 N.J. Super. 529, 537 (App. Div. 2008), certif. denied sub nom., High Point Ins. Co. v. Rutgers Cas. Ins. Co., 195 N.J. 522 (2008), likewise demonstrates that Cooper's "appreciable prejudice" rule must be guided by the extent to which its application augments the public policy favoring compensation of tort victims.  Hager, also involving an automobile accident, addressed the insured's breach of the duty to cooperate in the context of a claim-over by the injured claimant's insurance company against the liability insurer for the insured's vehicle.  In upholding the liability insurer's defense based on

10

the insured's failure to cooperate, the court reasoned:

> The "public interest" in providing compensation to "victims of negligence" was an essential component of the rationale for adopting the "appreciable prejudice" rule in <u>Cooper</u> . . . . In this case, however, High Point has already compensated Hager for the damage to her car and, based on our conclusion that Rutgers was entitled to disclaim coverage for [the driver] and [Rutgers' insured], High Point will now be obligated under . . . Hager's policy to compensate her for her personal injuries. . . . We do not question High Point's standing to pursue such a coverage claim. . . . But we believe that any reasonable doubt regarding the adequacy of Rutgers Casualty's showing of appreciable prejudice should be resolved in its favor when the party pursuing the claim is neither its insured nor the injured party.

<u>Id.</u> at 538 (citations omitted).  <u>Hager</u> thus reinforces the Supreme Court's point in <u>Gazis</u> that application of the "appreciable prejudice" rule -- including whether it applies at all -- turns on the particular circumstances presented.  <u>See</u> <u>Gazis</u>, 186 N.J. at 233.

Applying the principles of <u>Cooper</u>, <u>Gazis</u> and their issue here, there can be no conclusion but that Becton's blatant breach of its notice obligations voids any coverage it might have otherwise been afforded in connection with the Underlying Lawsuits.  Any other result writes the notice provisions out of the Policies, and upends the fundamental structure of liability policies with respect to interaction between insureds and insurers in response to claims and suits.

First of all, it is beyond question that Becton breached the Policies' notice provisions.  The TCSC Policies dictate that in the event suit is brought against the insured, the insured must "immediately" forward to the insurer "every demand, notice, summons or other process received by him or his representative."  (Cert., Ex. B)  The TPCC Policies provide that the insured must "[n]otify [the insurer] as soon as practicable" or "promptly," and "[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'. . . ."  (Cert., Exs. F, G)   That provision further states that the insured "must see to it that we receive notice of the claim or 'suit' as soon as practicable" or "promptly."  (<u>Id.</u>)  There is no debate as to whether Becton complied with these obligations in this case.  It did not.

The Distributor Plaintiffs commenced the Class Action Lawsuits in 2005, and Becton

11

litigated them until it settled in 2009.  (Id. ¶¶13, 17)  The Hospital Plaintiffs commenced the Class Action Lawsuits between 2005 and 2007, and Becton litigated them until the claim settled in 2013.  (Id. ¶¶18, 22)  Becton did not provide Travelers with notice of or documents regarding the Class Action Lawsuits until December 2013, more than *eight years* after commencement of the first suit.  (Id. ¶52)  Meanwhile, the first of the Retractable Lawsuits was commenced in August 1998 and the second in January 2001, and Becton settled those lawsuits in July 2004. (Id. ¶¶24, 28, 32)  Yet it did not provide Travelers with notice of or documents from those lawsuits until June 2014, nearly *fifteen years* after the original suit. (Id. ¶54)

Unquestionably, Becton's grossly delinquent notice to Travelers was not "immediate," "prompt," or "as soon as practicable."  It thus clearly breached its notice obligations.  See, e.g., Ethicon, Inc. v. Aetna Cas. and Sur. Co., 805 F. Supp. 203, 205-06 (S.D.N.Y. 1992) (notice provisions breached where underlying suit tendered sixteen years after complaint and after verdict), aff'd without opinion, 993 F.2d 1532 (2d Cir. 1993); Twp. of Irvington v. Coregis Ins. Co., A-2434-08T3, 2010 WL 1330022, at *3 (N.J. Super. Ct. App. Div. Apr. 7, 2010) (finding conclusion that insured breached the duty of cooperation is "virtually unassailable" because insurer "was kept in the dark about the existence, and the precarious status, of the Porras case until much too late in the litigation . . . ."); Sauer v. Preserver Ins. Grp., A-6134-08T1, 2010 WL 2560035, *1 (N.J. Super. Ct. App. Div. May 27, 2010) (insured breached notice obligations where insurer made aware of lawsuit nearly two years post-filing and after entry of default judgment); Peskin v. Liberty Mutual Ins. Co., 219 N.J. Super. 479, 481 (App. Div. 1987) (notice untimely where given eleven years after occurrence and twenty-one months after suit brought); see also Figueroa v. Puter, 84 N.J. Super. 349, 354 (App. Div. 1964) (notice "as soon as practicable" means "within a reasonable time" and while typically an issue of fact, can be decided as a matter of law where "facts are undisputed and different inferences cannot

12

reasonably be drawn therefrom").

Becton's blatant and inexplicable breach of its notice obligations voids coverage for the Underlying Lawsuits without the need for any "appreciable prejudice" inquiry.  As outlined above, the Supreme Court's tandem opinions in Cooper and Gazis teach that the "appreciable prejudice" rule was developed as a means to augment "the public policy of this State in favor of protecting automobile accident victims. . . ."  Gazis, 186 N.J. at 232.  While emphasizing that factor, Gazis also expressly instructs that "appreciable prejudice" is not to be applied in all scenarios.  186 N.J. at 233.  To the contrary, a particular case merits application of the "appreciable prejudice" rule only where it "presents circumstances close enough to those in Cooper to justify its extension."  Gazis, 186 N.J. at 231.

The circumstances here are nothing like those presented in Cooper and Gazis.  Unlike in Cooper and Gazis, "victims of negligence" will not go uncompensated if Becton's insurance coverage is voided.  Indeed, the claimants in the Underlying Suits are not accident victims, but corporate entities that claimed they sustained damages in their business operations due to Becton's alleged violation of anti-trust laws.  They have, moreover, been compensated from Becton's own funds, much of which was likely acquired by the very conduct which gave rise to the claims.  Given these circumstances, the opinions of the New Jersey Supreme Court do not support the imposition of an "appreciable prejudice" requirement.

Also critical is that this case bears no comparison to a personal-injury lawsuit brought against an unsophisticated individual insured who did not believe she was going to be sued -- the situation contemplated by the New Jersey Supreme Court when it determined to apply the "appreciable prejudice" requirement in Cooper.  Rather, this case presents a sophisticated, multi-billion-dollar pharmaceutical-company insured seeking coverage for anti-trust lawsuits brought against it by business customers and a competitor. And that sophisticated insured not only knew

13

it had been sued, but in fact resolved the multiple suits in question before notifying its insurer.

In <u>Cooper</u>, recognizing the "take-it-or-leave-it" nature of the typical automobile insurance policy, the Court expressed concern with upholding the "reasonable expectations" of the individual insured regarding her obligations under her automobile insurance policy with respect to a minor accident following which no one (until suit was filed two years later) suggested the insured was responsible.   51 N.J. 93-94.   Needless to say, the "reasonable expectations" of that individual insured in <u>Cooper</u> cannot remotely be equated with the expectations of Becton regarding its obligations under its business liability policies with respect to known lawsuits that were actively litigated over multiple years before being settled.   <u>Cf.</u> <u>Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.</u>, 179 N.J. 87, 101 (2004) (recognizing exception to *contra proferentem* "for sophisticated commercial entities that do not suffer from the same inadequacies as the ordinary unschooled policyholder and that have participated in the drafting of the insurance contract").   The circumstances presented here simply do not fit the profile meriting imposition of the "appreciable prejudice" rule employed in <u>Cooper</u>.

Of note, while the Supreme Court in <u>Gazis</u>, 186 N.J. at 232, refused to apply a "sophisticated policyholder" exception to application of the "appreciable prejudice" rule, its rationale for reaching that conclusion in fact reinforces that this case fails to present circumstances warranting an "appreciable prejudice" requirement.   In particular, the Court in <u>Gazis</u> recognized that <u>Cooper</u> raised "concerns" about the unsophisticated nature of the insured and that the contract at issue was one of adhesion, but found <u>Cooper</u> did not treat those "concerns" as "essential conditions" because the Court was "focused instead on the forfeiture issue."   <u>Id.</u>   The Court in <u>Gazis</u> explained:   "The Appellate Division in this matter recognized that the important consideration was whether compensation under the liability policy, albeit for excess coverage, would be available to cover a claim based on injuries to an automobile accident

14

victim.  That it was excess did not, and should not alter the relevant analysis."  Id.  Gazis, then, does not dismiss the Cooper Court's "concern" with the unsophisticated insured issue, but merely holds it subordinate to the overriding public policy in favor of assuring compensation to the victims of automobile accidents.  This case, of course, does not implicate that public policy.

The Third Circuit also considered this point in British Ins. Co. of Cayman v. Safety Nat. Cas., 335 F.3d 205 (3d Cir. 2003).  While the court there refused to apply a "sophisticated insured" exception to application of the "appreciable prejudice" rule, the rationale it employed suggests the court would reach the opposite conclusion here.  In particular, the court pointed to the "differences in the contractual undertakings of primary insurer and reinsurers" and emphasized that "notice provisions are significantly less important to the reinsurer than a primary insurer."  Id. at 213.  The court explained that a primary insurer's notice provisions:

> give the insurer an opportunity to acquire, through an adequate investigation, full information about the circumstances of the case, on the basis of which, it can proceed to disposition either through settlement or defense of the claim. . . .Thus, a reasonable notice clause is designed to protect the insurance-company from being placed in a substantially less favorable position that [sic] it would have been if timely notice had been provided, e.g., being forced to pay a claim against which it has not had an opportunity to defend effectively.

Id. at 213-14 (internal quotations omitted).  Reinsurers, on the other hand, are "not responsible for providing a defense, for investigating the claim, or for attempting to get control of the claim in order to effect an early settlement."  Id. at 214 (internal quotations omitted).  And those differences, the opinion details, are material in determining whether an "appreciable prejudice" requirement is appropriately applied. Id. at 213-14.  In contrast to British Ins. Co., this case implicates the very rights of a primary insurer recognized as relevant to whether the New Jersey Supreme Court would apply its "appreciable prejudice" rule.  335 F.3d at 214.  And whereas British Ins. Co. involved an "[in]sufficiently serious" "risk of impairment" of the reinsurer's rights at issue, id., this case involves the insured having stripped Travelers of its contractual

rights altogether.[4] Where a sophisticated insured such as Becton withholds tender of long-standing lawsuits until settlements of those suits, the circumstances simply do not implicate the rationale undergirding adoption of the "appreciable prejudice" rule in Cooper, 51 N.J. at 94.

Even assuming New Jersey law permits blind application of the "appreciable prejudice" requirement to an anti-trust case brought against a multinational company, Becton still is not eligible for the benefit of that rule.   Cooper and the New Jersey cases that follow it invoke a "good faith" prequalification to the "appreciable prejudice" rule -- where an insured has not acted in good faith, it cannot demand a showing of "appreciable prejudice" to save it from the consequences of its breach.  For example, in Solvents Recovery Serv. of New England v. Midland Ins. Co., 218 N.J. Super. 49 (App. Div. 1987), the Appellate Division looked to Cooper and held that "where the insured has acted in good faith," the "appreciable prejudice" rule applies to a breach of the insured's duty to cooperate.  Id. at 55 (citing Cooper, 51 N.J. at 94, for proposition that "[i]nsurance contracts are not truly consensual arrangements; they are available only on a take-it-or-leave-it basis").  In Hager, 398 N.J. Super. at 538, the Appellate Division recognized that Solvents "suggest[s] that an insured's 'good faith' should be a precondition of obtaining the benefit of the Cooper 'appreciable prejudice' rule," though the court did not decide the issue as it was unnecessary to dispose of the appeal.   Id.   Building on those decisions, DeMasi v. Lexington Ins. Co., A-3206-08T3, 2010 WL 3075674, at *9 (N.J. Super. Ct. App. Div. July 23, 2010), also indicates that unless policy language states otherwise, the insured's "good faith" is a prerequisite to invoking the benefit of the "appreciable prejudice" standard.

In DeMasi, an insured suspected of arson refused to grant his homeowners' insurer access

---

[4] The court in Federal Ins. Co. v. Purex Industries, Inc., 942 F. Supp. 872 (D.N.J. 1997), rejected the insurer's argument that prejudice need not be shown because the policies were "negotiated and bargained for by Purex," finding the at-issue provisions were "boilerplate."  Here, by contrast, there are notice provisions (in particular, the provisions pertaining to notice/knowledge of an occurrence) that contain Becton-specific language. (Cert., Exs. C, H, I)

to documents potentially relevant to whether he had a motive for arson. Id. at *8.  In evaluating whether the insured's breach of his obligation to cooperate voided coverage, the court first noted various prior decisions that have considered the insured's good faith as a "precondition to application of the appreciable prejudice rule" in the context of various policy breaches by the insured.  Id. at *9 (citing Solvents, 218 N.J. Super. 49; Hager, 398 N.J. Super. 529; and Ohaus v. Continental Cas. Ins. Co., 292 N.J. Super. 501 (App. Div. 1996) ("appreciable prejudice" rule applies "[w]here the insured has acted in good faith")).  With that backdrop, the court stated:

> There are grounds here to question the good faith of plaintiff. If, in good faith, he truthfully testified that he was ignorant as to the circumstances of the check cashing exemption and the false representation that the Burlington property was a rental property, continued good faith required him to permit Lexington access to the one source of information that he identified as capable of resolving that issue. . . . All that was required was for him to give his consent. He did not do so and has offered no reason why he could not have complied with a request that required such minimal effort on his part.

2010 WL 3075674, at *9 (citation omitted).  The court continued, "[a]rguably, the absence of good faith by plaintiff renders it unnecessary for us to apply the 'appreciable prejudice' rule." Id. at *10.  The applicable policy language, however, expressly stated the insurer was only relieved "of the duty to provide coverage 'if the failure to comply with the [duty to cooperate] is prejudicial to [Lexington].'" Id.  Because the policy explicitly required it, the court concluded that "the issue of prejudice must be addressed."  Id.  Thus, absent express policy language to the contrary, DeMasi underscores that where the insured has not acted in good faith, an insurer need not demonstrate "appreciable prejudice" for coverage to be voided based upon violation of the policy's notice provisions. See Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 306 (1985) (noting Cooper concluded that insured "did not lose the protection of her policy, because she omitted in good faith to give notice in the belief that no claim would be asserted against her").

Here, Becton has demonstrated an utter lack of good faith with its egregious and unexplained delay in tendering the Underlying Lawsuits.  Even if the "appreciable prejudice"

17

rule applies, Becton should not have the benefit of such powerful protection.  Flaunting its policy obligations altogether, Becton withheld notice to Travelers until it was certain that Travelers could have no part in the litigation of, and/or evaluation of the merits or worth of, the underlying claims.  And its breach was not limited to a single instance.  Rather, Becton now tenders for insurance reimbursement three distinct settlements arising out of age-old litigations about which Travelers was told nothing prior to the settlements being finalized.   And when asked by Travelers to explain its delay, Becton responded with a back-of-the-hand: "[Becton] shall not provide the requested information because it plays no legitimate role in Travelers' coverage determination."  (Compl., Ex. D, pg. 1)

Applying the "appreciable prejudice" rule in such circumstances would impermissibly transform that rule into a safe harbor for an insured that has acted in gross and patent disregard for its contractual duties in a manner that strips the insurer of all of its contractual rights.  See DeMasi, 2010 WL 3075674, at *9 (discussing cases considering insured's good faith as "precondition to application of the appreciable prejudice rule"); cf. New Jersey Eye Ctr., P.A. v. Princeton Ins. Co., 394 N.J. Super. 557, 570 (App. Div. 2007) (where insured's settlement of underlying suit was "in complete derogation" of insured's duties to cooperate and not assume any obligations without insurer's consent, such "fundamental breach" of insured's policy obligations precluded coverage).  Becton's obvious lack of good faith dictates that its breach of its notice obligations under the Policies precludes any coverage for the Underlying Lawsuits irrespective of any showing of prejudice.  See DeMasi, 2010 WL 3075674, at *9.

### B.   Travelers Has Been "Appreciably Prejudiced" By Becton's Breach Of The Policies' Notice Provisions.

Alternatively, in the event the Court determines Travelers must show a likelihood that it was "appreciably prejudiced" by Becton's breach of the Policies' notice provisions, there is no question but that the prejudice to Travelers is patent and paramount.

18

In the years since <u>Cooper</u>, the New Jersey Supreme Court has not articulated a specific test to establish a "likelihood of appreciable prejudice" in those instances in which such a showing is required.[5]  <u>See</u> <u>Hager</u>, 398 N.J. Super. at 536.  The Appellate Division, however, has identified two factors that "generally" are considered:  (1) "whether substantial rights have been irretrievably lost" as a result of the insured's breach; and (2) "the likelihood of success of the insurer in defending against the accident victim's claim" had there been no breach.  <u>Id.</u> (quoting <u>Sagendorf v. Selective Ins. Co. of Am.</u>, 293 N.J. Super. 81, 93 (App. Div. 1996) (quoting <u>Morales v. National Grange Mut. Ins. Co.</u>, 176 N.J. Super. 347, 355-56 (Law Div. 1980))). While certain Appellate Division cases have required satisfaction of both factors in order to demonstrate "appreciable prejudice," numerous others demonstrate that the analysis is a flexible one wherein the irretrievable loss of substantial rights suffices.

In <u>Hager</u>, for example, the Appellate Division described the analysis outlined above as factors that "generally" should be considered in evaluating whether an insurer has been appreciably prejudiced.  398 N.J. Super. at 536.  Considering those factors, the court found there was "no basis for concluding" that the insurer might have been successful in defending the underlying automobile accident claim if the insured and the driver of his car had not failed to cooperate.  <u>Id.</u> at 537. The court nevertheless found "appreciable prejudice" based upon the insured's and driver's "total failure" to respond to the insurer's requests for information, which "prevented [the insurer] from determining the nature of the relationship between [the driver] and [the insured] and whether [the insured] had given [the driver] permission to drive his vehicle." <u>Id.</u> The court concluded that as a result of the insured's failure to cooperate, the insurer had "irretrievably lost" the opportunity to ascertain the facts relevant to whether the driver was a permissive user of the car, which would determine whether coverage was owed to the driver.  <u>Id.</u>

---

[5] We note that the test established in <u>Cooper</u> is that the insurer demonstrate merely a "likelihood" of appreciable prejudice, not that it prove it has in fact been prejudiced. 51 N.J. at 94.

Accordingly, coverage was precluded by the breach of the policy's duty to cooperate.  Id.

In DeMasi, 2010 WL 3075674, at *10, the Appellate Division similarly described the two factors identified above as the "variables applicable to a determination of whether there has been appreciable prejudice" and found the factor "most relevant" in the case before it to be whether substantial rights of the insurer had been irretrievably lost.  Id.  The court held that factor satisfied, and thus "appreciable prejudice" proven, based upon the insured's refusal to give his homeowner's insurer access to tax records that were relevant to whether the insured had a motive for arson.  Id.  The court reasoned that the insured had foreclosed the insurer's investigation into pertinent financial details and that "plaintiff's conduct precludes Lexington from venturing beyond speculation to demonstrate precisely what course of action it would have pursued."  Id.  Because the insured's conduct caused the insurer to "irretrievably lose" the ability to discover facts that "had the clear potential of revealing fraud," the court found "a sufficient showing of prejudice to justify a forfeiture of coverage by plaintiff."  Id.

Indeed, in the context of notice after entry of default judgment in underlying litigations, the Appellate Division has twice found "appreciable prejudice" to exist without consideration of the insurer's likelihood of success on the merits in those underlying cases.  Martin, 2011 WL 1584333, at *1-2; Sauer, 2010 WL 2560035, at *1.  In Martin, the insured did not notify his automobile insurer, from whom he sought uninsured motorists benefits, of the subject auto accident or his lawsuit against the tortfeasor until after he had obtained a default judgment in that lawsuit.  2011 WL 1584333, at *1.  Noting the appreciable prejudice requirement as "the appropriate standard whenever breach of a prompt notice requirement without more would prevent an injured insured from recovering anticipated benefits," the court in Martin held the insurer's "loss of opportunity" to intervene in the insured's action against the tortfeasor "caused appreciable prejudice."  Id. at *1-2.  In reaching that conclusion, the court did not consider how

20

the insurer's intervention might have favorably altered the outcome of the action.  Id.

In Sauer, the insured was sued for negligence and breach of contract in connection with the construction of the plaintiffs' home.  The insured did not appear and a default judgment was entered, and the insurer did not learn of the suit until nearly two years after the complaint was filed -- six months after the entry of the default judgment.  2010 WL 2560035 at *1.  When the plaintiffs sued the insurer to collect on the default judgment, they argued that the insurer could not prevail on its defense based on the insured's breach of its notice obligations because no "appreciable prejudice" had been shown.  Id.  The court found that argument "clearly without merit" pursuant to New Jersey Court Rule 2:11-3(e)(1)(e), reasoning:

> The appreciable prejudice to Preserver from Alliance's breach of its duty to provide notice of plaintiffs' underlying action is manifest based on the passage of nearly two years between the filing of the complaint and Preserver being made aware of the action, the dismissal of other potentially liable parties from the underlying action during that intervening period, and the entry of a default judgment against Alliance.

Id.  As in Martin, the court's discussion on this point contains no suggestion of any requirement that the insurer particularize the manner in which its involvement might have favorably altered the outcome of the underlying litigation.  Sauer, 2010 WL 2560035 at *1.

Consistent with these decisions, the Supreme Court in Gazis, 186 N.J. 224, indicated that an insurer's loss of reinsurance coverage would suffice to prove "appreciable prejudice" resulting from the insured's breach of a policy's notice provision.  Id. at 233 n.2.  Gazis contains no suggestion that an insurer can only demonstrate prejudice when it shows a likelihood that it would have obtained a better outcome on the underlying claim.  Id.

In this case, Travelers has irretrievably lost its fundamental policy rights to be involved in the litigation and resolution of lawsuits that the insured contends implicate the Policies' coverage.  See Hager, 398 N.J. Super. at 537.  In particular, Becton withheld notice of the Underlying Lawsuits until after they were resolved through settlement.  Thus, rather than being

presented with nascent, or even on-going, litigation, Travelers was presented with various *faits accompli* that their policyholder now expects them to fund.  Travelers thus lost, entirely, all of its rights under its Policies -- to be apprised of and involved in the litigation leading up to the settlement of the underlying claims, or even to know anything at all about those claims.  The irretrievable loss of its rights renders Travelers appreciably prejudiced.  See <u>Martin</u>, 2011 WL 1584333, at *1-2; <u>DeMasi</u>, 2010 WL 3075674 at *27-28; <u>Sauer</u>, 2010 WL 2560035 at *1.

Depriving an insurer of its right to participate in an underlying action and then blindly requiring it to justify its reliance upon that right is contrary to the fundamental structure of the liability coverage.  That structure ensures that the insurer is to be given early notice of and an opportunity to be involved in the investigation and defense of the claims, and the evaluation of potential settlement, among other things.  See <u>Perini/Tompkins Joint Venture v. Ace American Ins. Co.</u>, 738 F.3d 95, 104 (4th Cir. 2013) (quoting <u>Prince George's County v. Local Gov't Ins. Trust</u>, 879 A.2d 81, 98, 100 (Md. Ct. App. 2005)).  Here, Becton's conduct wholly deprived Travelers of its basic contractual right to have a role in the defense and settlement of the Underlying Lawsuits. Those rights were not simply "impaired" by Becton's withholding of tender; they were obliterated entirely. See <u>Peskin</u>, 219 N.J. Super. at 481 (recognizing typical prejudice argument involves claim of "prejudice resulting from an[ ] impaired ability to adequately investigate the stale facts of the . . . claim").  Travelers was thus "appreciably prejudiced."  See <u>Perini/Tompkins</u>, 738 F.3d at 105 (insurer prejudiced as a matter of law when insured gave notice only after settling underlying claim).

The Fourth Circuit's recent decision in <u>Perini/Tompkins</u> explains well why "appreciable prejudice" must, if necessary, be found as a matter of law in this case.  There, the insured gave notice of an underlying lawsuit to its insurer six months after the insured had settled the claim, and the insurer claimed violation of its policy's "voluntary payments" and "no action" clauses.

22

In finding prejudice as a matter of law, the Fourth Circuit quoted the reasoning of a Maryland case, Prince George's County, 879 A.2d at 98, which addressed a late-notice defense:

> [T]he insured has presented the insurer with a *fait accompli* by delaying notice until after the judgment. The delay vitiates the purpose of the contractual notice requirement, as the insurer cannot exercise any of its rights to investigate, defend, control, or settle the suit. Accordingly, courts have held that the insurer is prejudiced as a matter of law. . . . By failing to notify the [insurer] of the incident, claim, and lawsuit until after the judgment, the [insured] nullified unilaterally all of the [insurer]'s rights and presented the [insurer] with a *fait accompli*. . . .
>
> [The insured] put the [insurer] in a position of proving a negative and speculating about what could have been. The [insurer] need not speculate. By itself, the abrogation of all of the [insurer's] contractual rights constituted prejudice. We hold that the [insurer] was prejudiced as a matter of law when the [insured] failed to notify the [insurer] of the incident, claim, and lawsuit until after an adverse judgment was entered.

Perini/Tompkins, 738 F.3d at 104 (footnote omitted).

The court in Perini/Tompkins also considered whether the same result would obtain under Tennessee law. It reasoned that law recognizes a "distinct difference between an insurer being provided late notice while litigation is ongoing or has not yet begun, and being surprised with a claim for settlement reimbursement after the matter has already been resolved." Id. at 106 n.5. It concluded that Tennessee's highest court would, in the *fait accompli* scenario, find for the insurer without requiring a showing of actual prejudice. Id. at 106. The circumstances of this case permit no conclusion other than that reached in Perini/Tompkins. The "abrogation of all of [Travelers'] contractual rights constituted prejudice" to Travelers. Id. at 104 (citation omitted).

The instant circumstances are also akin to those considered in Ethicon, 805 F. Supp. at 206, wherein the court, applying New Jersey law, held the insurer "clearly" established appreciable prejudice. There, the insured gave notice to its insurer sixteen years after the underlying complaint was filed and after two verdicts had been rendered against it. In finding "appreciable prejudice" established, the court noted: "There is no opportunity for Aetna to regain or even at this far remove to measure the contractual insurance rights and opportunities of

23

which it was deprived . . ." Id.  While the court in Ethicon looked to witness testimony, the instant case demands the same conclusion on the face of the pleadings.  As in Perini/Tompkins, Becton's tender of the Underlying Lawsuits after they had become *faits accompli* wholly deprived Travelers of its contractual rights to play a role in the litigation and settlement.  738 F.3d at 104-05; see also DeMasi, 2010 WL 3075674, at *10 (finding prejudice based on failure to cooperate, noting insured's conduct precluded insurer "from venturing beyond speculation to demonstrate precisely what course of action it would have pursued"); Harrisburg Area Comm. College v. Pacific Emp. Ins. Co., 682 F. Supp. 805, 809 (M.D. Pa. 1988) ("The insurance company would justifiably resist paying a settlement in those circumstances when it was deprived of counsel of its own choosing to oversee the matter and to negotiate, if possible, an acceptable resolution of the controversy."); Palkimas v. State Farm Fire & Cas. Co., 150 Conn. App. 655, 660 (2014) (noting "distinction between a delayed filing of a proof of loss and a failure to file" in finding insurer need not show prejudice to disclaim coverage for failure to file notice).  This is not a case of late notice; it is one of a complete failure to notify.

## III.   Becton's Breach Of The Cooperation And Voluntary Payments Provisions Entitles Travelers To Judgment.

As a condition of the coverage they provide, the Policies obligate the insured to cooperate with Travelers and further prohibit the insured from voluntarily making any payment or assuming any obligation without Travelers' consent.   Here, Becton's failure to give Travelers any notice of the Underlying Lawsuits until long after they commenced and after the Underlying Settlements is a gross breach of those policy obligations.  Coverage is accordingly precluded.

Again, there is no rational dispute as to whether Becton breached the subject cooperation conditions with respect to the defense or settlement of the claims asserted against Becton in the Underlying Lawsuits.  The Policies provide that the insured "shall cooperate with [Travelers]" and "shall not, except [at its] own cost, voluntarily make any payment, assume any obligation or

24

incur any expense. . ."  (Cert., Exs. B, F, G)  They require the insured to, among other things, assist in investigation and settlement, and help Travelers in obtaining evidence and information. (Id.)  Becton did none of these things, and breached the Policies' cooperation conditions.

Indeed, by giving Travelers no notice whatsoever until after those lawsuits were settled, Becton ensured both that Travelers would have no opportunity to even request Becton's cooperation and that there would, in fact, be none.  Further, by settling the Underlying Lawsuits unilaterally, Becton clearly voluntarily assumed obligations to pay without Travelers' knowledge or consent, in violation of the Policies' conditions. Given these breaches, the principal question that remains for this Court is whether a showing of a likelihood of "appreciable prejudice" is even required in order for those breaches to be found to void coverage, and if so, whether such prejudice exists.  Either way, a finding of no coverage is warranted.  But we begin first with Travelers' position that no "appreciable prejudice" inquiry is required.

In New Jersey Eye Ctr., P.A. v. Princeton Ins. Co., 394 N.J. Super. 557, 570-71 (App. Div. 2007), the Appellate Division held that an insured's settlement of an underlying lawsuit without the consent of a defending insurer precluded coverage because that settlement constituted a "fundamental breach" of the insured's duties to cooperate and to refrain from making any voluntary payments.  In that case, the parties to the underlying suit were engaged in settlement discussions before trial. Id. at 28.  The defending insurer's representative was initially present during those discussions but left following an apparent impasse, yet the insured nevertheless proceeded to the settle the case in his absence after regular court hours. Id. at 28.

In those circumstances, the court held the insured's actions vitiated coverage, and declined the insured's invitation to consider whether the settlement was collusive or unreasonable. Id. at 31.  The court reasoned that the insured's conduct was "in complete derogation of . . . the obligations of the insured, which include the duty to '[c]ooperate . . . in the

investigation, settlement, or defense of the claim or suit' and the duty not to 'assume any obligation ... without [Princeton's] consent.'" Id. at 33.  It accordingly held:

> [W]e do not find it necessary to even consider whether the findings of the judge below, that the procedure adopted was not the product of bad faith or collusion and the damages were reasonable in amount, are supported by the record. In our judgment, that is simply immaterial because the purported settlement represented such a fundamental breach of the insured's obligations to Princeton.

Id.  The court did not assess whether the insurer had suffered "appreciable prejudice," and did not discuss the insured's "good faith."  394 N.J. Super. at 570.  Accordingly, Eye Center indicates that no prejudice inquiry is warranted where the insured commits a "fundamental breach" of its obligations under a policy's "voluntary payments" and cooperation conditions.

While this conclusion arguably conflicts with those Appellate Division decisions requiring a showing of "appreciable prejudice" for violations of the "voluntary payments" and cooperation conditions, see, e.g., Hager, 398 N.J. Super. at 536-38 (applying "appreciable prejudice" rule to cooperation condition); Ohaus, 292 N.J. Super. at 511 (applying "appreciable prejudice" rule to "voluntary payments" condition), it is entirely consistent with the Court's cautionary note in Gazis, 186 N.J. at 232, that the "appreciable prejudice" requirement is not a blanket rule to be applied in all scenarios.  Here, the circumstances presented are nothing like those in Cooper and Gazis and thus do not warrant application of an "appreciable prejudice" inquiry.  See Gazis, 186 N.J. at 232.  Travelers thus submits that the New Jersey Supreme Court would follow the approach of Eye Center in the context of Becton's "fundamental breach" of the policy obligations at issue, and hold that breach precludes coverage.

Further, even if a showing of "appreciable prejudice" is required, the circumstances presented here plainly suffice.  For the reasons outlined above, an insurer is prejudiced as a matter of law when its insured litigates an underlying suit for years and settles that suit before providing the insurer with any notice of that suit.  Here, Becton utilized that approach in

connection with not just one underlying lawsuit, but multiple lawsuits, litigated over the course of many years.  Becton flouted its contractual duties so as to erase all of Travelers' contractual rights to be involved with the Underlying Lawsuits.  "Appreciable prejudice" exists as a matter of law under those circumstances.  See Perini/Tompkins, 738 F.3d at 104-06.

**IV.    The Policies' No Action Clause Bars Coverage.**

The Policies provide that no action shall lie against Travelers unless, as a condition precedent thereto, there has been both full compliance with the terms of the Policies, *and* the insured's obligation to pay has been set by judgment following trial or a settlement made with Travelers' written agreement.  (Cert., Exs. B, F, G) Here, none of the Underlying Actions reached trial, and Becton made no effort to inform Travelers -- let alone seek its approval -- when it entered into the Settlements.   Becton's failure to make any effort to comply with this provision prevents it from seeking coverage from Travelers now.

New Jersey courts apply the no-action clause to prevent an insured from seeking coverage for a claim paid without notice or consent of its insurer.  In Bacon v. Am. Ins. Co., 131 N.J. Super. 450 (Law Div. 1974), aff'd, 138 N.J. Super. 550 (App. Div. 1976), an insured settled a claim against it for a faulty product without notifying its liability insurer, and then sought insurance indemnification for the settlement.  131 N.J. Super. at 453-54.  The insurer declined coverage, and the insured filed suit. 131 N.J. Super. at 454.  The insurer pointed out that its policy contained a "no-action" clause, stating that no action shall lie against it unless there is compliance with policy's terms and the insured's obligation to pay has been set by judgment or an agreed settlement.  131 N.J. Super. at 458.  Examining this provision, the court noted that its purpose is twofold: it is designed to "(1) to avoid joinder of the insurance company by the injured person in the damage action against the insured, and (2) To prevent suit against the carrier by the injured person *or the insured* until the damages have been fixed by final judgment

27

after trial of that action or by proper agreement."  131 N.J. Super. at 459 (internal quotations omitted) (emphasis added).   In other words, the court wrote,

> prior to suing its carrier the insured must have in hand a final judgment of damages or a settlement agreement of 'proper' form, that is, one involving the insurer as well as the claimant. In the event that the insured does not have either a judgment or settlement and nonetheless commences suit against the insurer, the carrier can set up the failure to comply with the condition as a defense.

Id.  Because the insured in Bacon did not have a judgment or settlement involving the insured, the insurer, and the claimant in hand, the court found that the no-action provision "constitute[d] an absolute defense to plaintiffs' suit at this time."  131 N.J. Super. at 460.

The Third Circuit, applying New Jersey law, has likewise enforced the no-action provision, finding that an insured's decision to incur costs in remediating a construction issue allegedly caused by its work without its insurer's approval was barred by the same clause discussed in Bacon.  See Permasteelisa CS Corp. v. Columbia Cas. Co., 377 F. App'x 260, 265 (3d Cir. 2010).   Focusing on the insured's obligation to pay the amount at issue, the Permasteelisa court found that Bacon was determinative and held that "in the absence of a final judgment, Permasteelisa was not 'legally obligated to pay' for the remediation . . . ." Permasteelisa, 377 F. App'x at 267. The result can be no different here.   Becton made a commercial decision to pay in the Underlying Actions when commercial entities levied claims against it.  The Policies require that Becton have a "final judgment of damages or a settlement agreement of 'proper' form" before seeking coverage.   See Bacon, 131 N.J. Super. at 459. Becton has thus ignored this requirement, and cannot seek coverage under the Policies.

It is necessary to note, moreover, that the "final judgment" requirement is outside of the prejudice inquiry.  In Cooper, 51 N.J. at 91-92, the Court noted the "no action" clause's first element -- compliance with policy conditions -- when concluding that the insurer in the case before it was required to show a likelihood of prejudice stemming from the insured's late notice.

28

It did not address the second aspect of the "no action" clause, requiring an insured to have either a final judgment or insurer-approved settlement in hand before bringing action against the insurer.  Id. (noting that no action shall lie unless the "insured shall have fully complied with all the terms of the policy, of which the notice provision is one," but not addressing the final judgment requirement).  Indeed, the insured in Cooper tendered to the insurer when she was served with the underlying lawsuit, not after she resolved the suit.  See Cooper, 51 N.J. at 89.

As found in Bacon, 131 N.J. Super. 450, the prejudice inquiry is simply inapplicable here, where Becton seeks to collect on settlements it agreed to without Travelers' approval (indeed, without Travelers' involvement at all).  Even assuming, however, that some novel prejudice requirement can be imposed upon the final judgment/agreed settlement requirement in the no-action clause, Travelers has demonstrated that prejudice.  As discussed above, Becton's utter failure to make any effort to include Travelers in the Underlying Actions has fundamentally undermined all of the conditions upon which the Policies are built, and left Travelers without any right to control its own risk.  That Becton has not sustained a final judgment or secured a proper settlement (i.e., one approved by Travelers) dictates that it is not entitled to the benefit of the Policies' coverage.  Irrespective of whether prejudice is required, the no-action clause precludes Becton from pursuing its claim for coverage under the Policies.

## V.    New Jersey Law Precludes Becton's Recovery Of Pre-Notice Expenses.

The duty to defend is triggered by facts "*known* to the insurer."  SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 196 (1992) (emphasis in original).  In this case, Becton had already paid or committed to pay every single dollar it now seeks from Travelers before so much as notifying Travelers of the Underlying Actions.  Travelers has no obligation to reimburse Becton for pre-notice expenses because no such obligation could have possibly been triggered.

An insured must actually tender a suit to an insurer before the insurer can fairly be forced

to assume responsibility.  See SL Indus., 128 N.J. at 199.  In SL Industries, the insured timely tendered a suit to its insurer, and the insurer properly declined coverage.  Id., 128 N.J. at 195. Shortly thereafter, the insured received an additional pleading which expanded the allegations such that the suit then arguably fell within coverage. Id.  The insured, however, did not attempt to tender the new pleading to its insurer until two years after receipt. Id.  The insurer again declined, and the insured settled.  Id. at 196.  In the insured's coverage action, the Court determined that although the new pleading would have required the insurance company to defend, the insured was "responsible for promptly conveying to its insurance company the information that it believe[d] will trigger coverage." Id. at 199.  It held that "when the insured's delay in providing relevant information prevents the insurer from assuming control of the defense, the insurance company is liable only for that portion of the defense costs arising after it was informed of the facts triggering the duty to defend." Id. at 200; see also Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 817 F. Supp. 1136, 1160-61 (D.N.J. 1993), ("Chemical Leaman has already conceded that it breached the notice clause. . . . the court holds that Aetna is not responsible for reimbursing plaintiff for defense costs incurred by Chemical Leaman prior to [the date of first notice]."), aff'd in part and remanded, 89 F.3d 976 (3d Cir. 1996).

Where, as here, the insured's failure to tender information to an insurer prevents the insurer from assuming a putative obligation, established New Jersey law holds the insured foreclosed from later demanding reimbursement.  Travelers has no obligation to reimburse Becton for defense expenses incurred prior to Becton's tender of the Underlying Actions.

## CONCLUSION

For the foregoing reasons, Travelers respectfully requests that the Court grant its Motion.

By: /s/ William T. Corbett, Jr.

William T. Corbett, Jr.
Laura A. Brady

30

DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel:  (973) 549-7000
william.corbett@dbr.com
laura.brady@dbr.com

*Counsel for Travelers Casualty and Surety
Company and Travelers Property Casualty
Company of America*