**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TRAVELERS CASUALTY AND SURETY
COMPANY and TRAVELERS PROPERTY
AND CASUALTY COMPANY OF AMERICA,

*Plaintiffs*,

v.

BECTON DICKINSON AND COMPANY,

*Defendant*.

Civil Action No. 14-4410

**MEMORANDUM OPINION**

**John Michael Vazquez, U.S.D.J.**

On April 5, 2016, the Court denied Plaintiffs', Travelers Casualty and Surety Company and Travelers Property and Casualty Company of America (collectively "Plaintiffs"), motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. D.E. 43. Plaintiffs now move the Court to reconsider its decision or, alternately, to indicate to the Third Circuit that an interlocutory appeal is warranted. D.E. 45. Defendant Becton Dickinson and Company ("Defendant") filed a brief in opposition to Plaintiffs' motion (D.E. 46) and Plaintiffs filed a reply (D.E. 51). The Court reviewed all of the arguments made in support or in opposition to the motion, and considered the motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons stated below, Plaintiffs' motion for reconsideration is denied and the Court will not indicate that an interlocutory appeal is warranted.

### Background

This case involves an insurance coverage dispute. For the relevant years, Plaintiffs provided Defendant with "occurrence-based" insurance policies. The policies covered the years 1978 through 1999. Am. Comp. ¶¶ 33, 42 (D.E. 4). In their amended complaint, Plaintiffs allege that Defendant settled several lawsuits and belatedly (by years) tendered the lawsuits to Plaintiffs for coverage.[1] *Id.* ¶¶ 13-32, 52-62. Plaintiffs then sued Defendant for declaratory

---

[1] The underlying lawsuits consisted of class actions, with the first being filed in 2005, and with settlements occurring in 2009 and 2013. The underlying lawsuits also included an anti-trust action originating in 1998 (resulting in dismissal), a related anti-trust action filed in federal court in 2001, and a 2004 settlement. Plaintiffs allege that Defendant did not tender the class action lawsuits until 2013 or the anti-trust matter until 2014. Am. Comp. ¶¶ 13-32, 52-62.

relief, asserting that Defendant's breaches of the policies precluded Defendant from recouping any amounts related to the underlying lawsuits.

Plaintiffs thereafter moved for a judgment on the pleadings pursuant to Rule 12(c) claiming, among other things, that Defendant breached the notice provisions of the insurance policies. D.E. 12-1 at 7-27. Before the motion was decided, Plaintiffs submitted a letter attaching a recent decision of the New Jersey Supreme Court in *Templo Fuente De Vida Corporation v. National Union Fire Insurance Company of Pittsburgh*, 224 N.J. 189 (2016). D.E. 35. Plaintiffs argued that the *Templo Fuente* decision was "controlling authority" that entitled it to prevail on the pending motion. *Id.* at 1-3. Defendant responded that the New Jersey Supreme Court's opinion did not change the equation because, among other things, it concerned a "claims made" insurance policy rather than the "occurrence-based" policy at issue in the current matter. D.E. 36 at 1-2.

As noted, the Court denied Plaintiffs' motion for judgment on the pleadings on April 5, 2016. D.E. 43. The Court explicitly acknowledged the supplemental submissions concerning the *Templo Fuente* decision and, in fact, directly cited the case. *Id.* at 1-2. In denying Plaintiffs' motion, the Court noted the difference between "claims made" and "occurrence-based" policies under New Jersey law, that it could find no New Jersey cases that actually applied Plaintiffs' argument concerning the appreciable prejudice doctrine,[2] and that there were numerous material issues of fact in dispute. *Id.* at 1-3.

Plaintiffs bring the current motion for reconsideration, arguing that the Court overlooked *Templo Fuente* as well as other cases cited in its original briefs (despite the fact that Court expressly referred to all submissions of the parties and actually cited the *Templo Fuente* case in its order). D.E. 45-1 at 1-9. Alternately, Plaintiffs ask the Court, pursuant to 28 U.S.C. § 1292, to indicate to the Third Circuit that an interlocutory appeal is warranted. *Id.* at 9-12.

Defendant replies that neither request is appropriate. D.E. 46. As to the motion for reconsideration, Defendant asserts that mere disagreement with a court's decision is insufficient to warrant reconsideration and that Plaintiffs cannot meet the requisite legal standard for such a motion. *Id.* at 1-7. Defendant similarly argues that Plaintiffs fail to meet the necessary requirements for an interlocutory order under 28 U.S.C. § 1292. *Id.* at 7-11.

Following the initial briefing, Plaintiffs submitted additional information to the Court, D.E. 59, to which Defendant responded, D.E. 62. Plaintiffs indicated that Plaintiff Travelers Property Casualty Corp. merged with the St. Paul Companies in April 2004. Thereafter, St. Paul Mercury Insurance Company (which Plaintiffs indicate is their affiliate as a result of the merger), issued insurance policies to Defendant for the period of October 2005 through October 2011. Plaintiffs indicate that "[i]n applying for and procuring those policies, Defendant provided information regarding the existence of the underlying lawsuits and the 2004 and 2009 underlying settlements at issue to the underwriting personnel of St. Paul Travelers[.]" D.E. 59 at 1. Plaintiffs claim that this newly-discovered information has no impact on it current motion. *Id.* at 1-2.

---

[2] The doctrine is explained later in this opinion.

2

## Motion for Reconsideration

In the District of New Jersey, motions for reconsideration can be made pursuant to Local Civil Rule 7.1(i). The rule provides that such motions must be made within 14 days of the entry of an order, and Plaintiffs have complied with the time requirement. Substantively, a motion for reconsideration is viable when one of three scenarios is present: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *Carmichael v. Everson*, No. 03-4787, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004) (citations omitted). A motion for reconsideration, however, does not entitle a party to a second bite at the apple. Therefore, a motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, *2-3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

Neither an intervening change in the controlling law nor the availability of new evidence is asserted by Plaintiffs. Instead, Plaintiffs argue that the Court overlooked "controlling New Jersey precedent" and thereby committed a "clear error of law." D.E. 45-1 at 2. Yet, Plaintiffs cite no new case law other than what was submitted in their prior papers. Plaintiffs appear to erroneously conflate the Court's failure to expressly address all of their case citations with the Court overlooking those decisions. As noted, the Court's April 5 order expressly referred to all of the parties' filings regarding the original motion. Indeed, the Court explicitly cited to *Templo Fuente*. D.E. 43 at 2. Thus, because Plaintiffs cannot point to any law that the Court overlooked or to any clear error of law, its motion for reconsideration is denied.

However, for purposes of the record, the Court will further explain the deficiencies in Plaintiffs' argument. At the outset, it is important to note the fundamental difference between insurance policies that are "occurrence-based" versus those that are "claims made" (also sometimes referred to as "discovery policies). In *Zuckerman v. National Union Fire Insurance Company*, 100 N.J. 304, 310 (1985), the Supreme Court of New Jersey explained the distinction between the two types of policies as follows:

> The standard definitions for "discovery" and "occurrence" policies appear in *Samuel N. Zarpas, Inc. v. Morrow*, 215 F.Supp. 887 (D.N.J. 1963):
>
>> [T]here are two types of Errors and Omissions Policies: the "discovery" policy and the "occurrence" policy. In a discovery policy the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurance company during the period of the policy, no matter when the act occurred. In an occurrence policy the coverage is effective if the negligent or omitted act occurred during the period of the policy, whatever the date of discovery. [*Id.* at 888.]

3

Variations on this definitional theme pervade the case law. The fundamental distinction between the two types of policies has been expressed in different terms and with differences in emphasis. For example, the court in *Brander v. Nabors*, 443 F.Supp. 764 (N.D. Miss.), aff'd, 579 F.2d 888 (5th Cir. 1978), distinguished these policy types based on the period for which coverage is provided:

> Basically, the "claims made" policy would provide unlimited retroactive coverage and no prospective coverage at all, while the "occurrence" policy would provide unlimited prospective coverage and no retroactive coverage at all. [*Id.* at 767.]

"Claims made" and "occurrence" policies may also be distinguished on the basis of the difference in the peril insured. One commentator has noted:

> In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place. [S. Kroll, *supra,* 13 *Forum* at 843.]

*Zuckerman*, 100 N.J. at 310-11.

Thus, a critical difference between the two types of policies is that "claims made" insurance policies by definition, only cover claims that are actually made by the insured during the policy period. Timely notification by the insured of the claim is part and parcel of the policy itself. *Id.* at 324 ("[T]he event that invokes coverage under a 'claims made' policy is transmittal of notice of the claim to the insurance carrier."). By comparison, "occurrence-based" insurance covers pertinent events that occur while the policy is in effect, even if the insured does not learn of the claim until after the policy has expired. The New Jersey Supreme Court has recognized this crucial distinction. The Court has observed that an extension of the notice period in a "claims made" policy would effectively extend the period of insurance coverage. *Gazis v. Miller*, 186 N.J. 224, 229 (2006). This expansion of coverage would be antithetical to "claims made" policies since such policies are priced with the limited period of coverage in mind. *Zuckerman*, 100 N.J. at 324 ("[S]uch an expansion in the coverage provided by 'claims made' policies would significantly affect both the actuarial basis upon which premiums have been calculated and, consequently, the cost of 'claims made' insurance."). On the other hand, the New Jersey Supreme Court has indicated that since notice in "occurrence-based" policies is "subsidiary to the event that invokes coverage[,]" notice should be "liberally" construed. *Gazis*, 186 N.J. at 229-33 (citing *Zuckerman*, 100 N.J. at 324).

Due to this essential difference between the two types of policies, in matters stemming from "occurrence-based" policies, New Jersey courts have required that an insurer show not only late notice of a claim by an insured but also that the insurer suffered "appreciable prejudice" as a result of the late notice. *Id.* at 233. The standard was first announced by the New Jersey

Supreme Court in *Cooper v. Government Employees Insurance Company*, 51 N.J. 86, 94 (1968). Appreciable prejudice is determined by analyzing two separate variables. The first is whether the insured's "substantial rights have been irretrievably lost" by the insured's late notice. *Sagendord v. Selective Ins. Co. of Am.*, 293 N.J. Super 81, 93 (App. Div. 1996) (citation omitted). Notably, an insured's inability to investigate a claim in its normal course fails to meet this requirement. *Id.* The second factor in evaluating appreciable prejudice concerns the likelihood of the success of the insurer in defending the underlying claims lodged against the insured. *Id.*

With the key difference between "claims made" and "occurrence-based" policies in mind, the Court turns to Plaintiffs' argument. Plaintiffs contend that the appreciable prejudice standard does not apply here. Specifically, Plaintiffs claim that this "Court overlooked the 'sophisticated insured' exception to the appreciable prejudice rule mandated by *Templo Fuente*[.]" D.E. 45-1 at 2-6. Plaintiffs further assert that *Templo Fuente* is "controlling law" and that this Court's April 5 order was in "direct conflict" with the decision. *Id.* Plaintiffs are incorrect for two reasons. First, *Templo Fuente* did not apply to "occurrence-based" policies, which are at issue in this case. Second, and more importantly, the pertinent *controlling* decision of the New Jersey Supreme Court expressly rejected Plaintiffs' position. Plaintiffs do not argue, in good faith, for a change to the law in New Jersey. Instead, Plaintiffs boldly assert that their position reflects binding precedent in New Jersey. Plaintiffs are in error.

*Templo Fuente* concerned a "claims made" policy and its holding was so limited. 224 N.J. at 193 ("We hold that because this Directors and Officers *"claims made" policy* was not a contract of adhesion but was agreed to by sophisticated parties, the insurance company was not required to show that it suffered prejudice before disclaiming coverage on the basis of the insured's failure to give timely notice of the claim.") (emphasis added). As a result, because *Templo Fuente* did not address an "occurrence-based" policy, it is not controlling law in this matter.[3]

Critically, however, in *Gazis*, the Supreme Court of New Jersey did directly address Plaintiffs' current claim — that is, whether there is a sophisticated insured exception to the appreciable prejudice standard in an "occurrence-based" policy. The Court determined that the Appellate Division "correctly discounted whether [the insured] . . . could be described as *sophisticated*, or whether the contract was a contract of adhesion." 186 N.J. at 232 (emphasis added). The Court in *Gazis* continued that neither the sophistication of the parties nor the fact that the insurance contract was one of adhesion were "essential conditions" in deciding whether to apply the appreciable prejudice standard to "occurrence-based" policies. *Id.* In short, the New Jersey Supreme Court expressly rejected the very proposition which Plaintiffs now claim is controlling and binding on this Court. Moreover, in *Gazis*, the lone *dissenting* opinion urged that there should be an exception to the appreciable prejudice standard for "occurrence-based"

---

[3] Plaintiffs' reliance on *Navigators Specialty Insurance v. Pharmanet Development Group, Incorporated*, No. 15-cv-6285, 2016 WL 1228848 (D.N.J. March 29, 2006) is also misplaced. In that matter, Judge Sheridan ruled that *Templo Fuente* did not apply because the insured had not provided late notice. *Id.* at *5. Judge Sheridan, however, did not address the issue in this case — the difference between "claims made" and "occurrence-based" policies.

5

policies if the insured is sophisticated and the contract was not one of adhesion. *Id.* at 233-38 (Rivera-Soto, J., dissenting). Thus, while Plaintiffs' current argument was championed by the lone dissenter, it was not accepted by the majority of the Supreme Court. And the *Templo Fuente* Court nowhere indicated that it was overturning the decision in *Gazis*, which is controlling precedent as to "occurrence-based" policies.

While failing to acknowledge this vital point from *Gazis*, Plaintiffs nevertheless argue that the Court actually overlooked *Gazis* because the New Jersey Supreme Court indicated in that matter that the appreciable prejudice standard does not automatically apply to "occurrence-based" policies. D.E. 45-1 at 7. In its April 5 order, the Court stated the following:

> The Court was unable to find any case involving an alleged violation of an occurrence-based policy in which the appreciable prejudice doctrine did not apply. In addition, the appreciable prejudice doctrine has been applied to insured corporations, and is not limited to coverage disputes for tortfeasors. *See, e.g., Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 996 (3d Cir. 1996) (applying doctrine in commercial environmental clean-up dispute between insurance company and tank truck company); *Pfizer, Inc. v. Emps. Ins. Of Wausau*, 154 N.J. 187, 206 (1998) (in conflict of law analysis acknowledging that "appreciable prejudice" doctrine would apply to late-notice dispute in an environmental insurance coverage case involving insurance company and pharmaceutical company).

D.E. 43 at 2-3.

The Court's observation was accurate. The Court has found no New Jersey case, nor have Plaintiffs cited to any, in which a New Jersey court has ruled that the appreciable prejudice standard would not be applied in a case brought pursuant to an "occurrence-based" policy. The Third Circuit has recognized as much. *See, e.g., British Ins. Co. of Cayman v. Safety Nat. Cas.*, 335 F.3d 205, 212 (3d Cir. 2003) ("We begin our analysis by acknowledging the well-settled New Jersey rule that a primary insurance carrier must show a likelihood of appreciable prejudice . . . ."). Plaintiffs can only point to language in *Gazis* which suggests that New Jersey courts may not always apply the appreciable prejudice standard to a certain "occurrence-based" policy. Unfortunately for Plaintiffs, the two considerations it posits – the sophistication of the parties and the fact that its policies were not contracts of adhesion – were found by the Supreme Court of New Jersey in the very same case *not* to be essential conditions as to whether the appreciable standard would apply.[4] *Gazis*, 186 N.J. at 232.

---

[4] Of note, the Court in *Gazis* said of the appreciable prejudice standard in "occurrence-based" policies:

> New Jersey courts have applied the *Cooper* prejudice rule in various other contexts. *See, e.g., Pfizer v. Employers Ins. of Wausau,* 154 N.J. 187, 206, 712 A.2d 634 (1998) (stating as general proposition that New Jersey requires a showing of prejudice before insurance can be denied due to late notification); *Sagendorf v. Selective Ins. Co. of America,* 293 N.J .Super. 81, 94–95, 679 A.2d

6

Plaintiffs also claim that the Court overlooked the decision in *Bacon v. American Insurance Company*, 131 N.J. Super 450 (Law. Div. 1974), *aff'd*, 138 N.J. Super. 550 (App. Div. 1976) concerning a "no-action" clause in an insurance contract. D.E. 45-1 at 7-8. *Bacon* concerned a coverage dispute in which the insured had sued the insurer. 131 N.J. Super. at 453-54. The insurance contract in question contained a no-action clause which prohibited the insured from suing the insurer unless the insured had complied with all the terms of the policy. *Id.* at 458-60. Because the insured had not complied with the material terms of the policy, the court in *Bacon* concluded that the no-action clause likewise prohibited the suit before it because the insured had initiated the matter. *Id.* at 460.

In this case, the policies also had no-action clauses. Am. Compl. ¶ 41 ("No action shall lie against the [Plaintiffs] unless . . . ."); ¶ 50 ("No person or organization has the right . . . to sue us . . . unless all of its term have been fully complied with."). Yet, the decision is *Bacon* is unavailing to Plaintiffs for a simple reason – Defendant did not sue Plaintiffs. Plaintiffs brought suit in this matter. Thus, the no-action clauses here are inapplicable and *Bacon* is inapposite.[5]

Finally, as the Court indicated in its April 5 order, there are material issues in this case which will need to be explored in discovery before they are properly resolved, either by way of summary judgment or trial. For example, Plaintiffs (again) urge the Court to rule on the pleadings that Plaintiffs are not liable for any pre-tender costs and expenses, citing *SL Industries, Incorporated v. American Motorists Insurance Company*, 128 N.J. 188 (1992). D.E. 45-1 at 8-9. *SL Industries*, however, was the result of a summary judgment motion. 128 N.J. at 196. Moreover, the Court's own independent research also indicated that such issues were addressed following discovery at the summary judgment stage. *See, e.g., Ohaus v. Continental Casualty Insurance Company*, 292 N.J. Super. 501 (App. Div. 1996). Defendant has indicated that there are other provisions in the relevant insurance policies, such as unintentional errors and omission

---

> 709 (App. Div. 1996) (holding that under both "garage" policy and umbrella insurance policy, insurer must show prejudice from service station insured's failure to provide notice "as soon as practicable" for coverage for environmental spill); *Solvents Recovery Serv. of New England v. Midland Ins. Co.*, 218 N.J. Super. 49, 51–55, 526 A.2d 1112 (App. Div. 1987) (holding that general liability insurer required to show prejudice before late notification of occurrence, claim or suit will bar coverage for environmental cleanup); *Costagliola v. Lawyers Title Ins. Corp.*, 234 N.J. Super. 400, 406, 560 A.2d 1285 (Ch. Div. 1988) (finding that title insurance provider must show prejudice before coverage will be avoided for breach of five-day notice requirement).

186 N.J. at 230. The Court did not disavow the cases or indicate that they were wrongly decided.

[5] Of course, even if Defendant had sued Plaintiffs, the no-action clauses would only potentially be applicable if the Court first found that Defendant had breached its insurance policies with Plaintiffs. The Court is in no position to make such a finding at this early stage of the case and without the benefit of a fully-developed record.

7

endorsements, as well as issues concerning whether there was an actual breach of the policies. Plaintiffs' supplemental filing with the Court, D.E. 59, indicates that it has recently learned that St. Paul Travelers was apprised of the underlying suits and settlements well prior to the 2013 and 2014 dates alleged in the Complaint. Plaintiffs did not inform the Court of precisely when Defendant provided the notice, but the Court assumes that it was in the timeframe of post-October 2004 through 2010, given the dates in Plaintiffs' letter. Plaintiffs acknowledge that they only located this information in response to a discovery request from Defendant. While Plaintiffs argue that the newly-discovered information has "no bearing' on the current motion, the Court disagrees. Discovery needs to be taken so that the record can be developed. At that point the issues will be ripe for resolution, either by way of summary judgment or trial.

### Interlocutory Appeal

Plaintiffs alternately request that the Court insert language in an order indicating that this matter is appropriate for an interlocutory appeal. 28 U.S.C. § 1292(b) provides in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order[.]

> A district court may certify a non-final order for interlocutory appeal where: (1) the order involves a controlling issue of law; (2) there is substantial ground for difference of opinion as to the question of law; and (3) the appeal would have the potential to materially advance the ultimate termination of the litigation. *Mylan Pharms. Inc. v. Celgene Corp.*, No. 14-2094, 2015 WL 409655, at *1 (D.N.J. Jan. 30, 2015). The burden is on the movant to demonstrate that all three requirements are met. *Piacentile v. Thorpe*, No. 12-7156, 2016 WL 3360961, at *2 (D.N.J. June 8, 2016). However, even if all three criteria are met, "the district court may still deny certification, as the decision is entirely within the district court's discretion." *Id.* Further, Section 1292(b) "is to be used sparingly and only in exceptional circumstances that justify a departure from the basic policy of postponing review until the entry of the final order." *Acosta v. Pace Local I-300 Health Fund*, No. 04-3885, 2007 WL 1074093, at *1 (D.N.J. Apr. 9, 2007) (internal quotation marks omitted).

Plaintiffs argue that the April 5 order involves two questions of law that are appropriate for interlocutory appeal: (1) whether an "appreciable prejudice" inquiry applies to all "occurrence-based" policies; and (2) whether the "appreciable prejudice" inquiry is only available to policyholders that have acted in "good faith." D.E. 45-1 at 10-12. The Court denies Plaintiffs' request to submit an interlocutory order for both questions.

The first question is easily addressed. A substantial ground for difference of opinion exists if "there is a genuine doubt as to the correct legal standard." *Kapossy v. McGraw-Hill,*

8

*Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996). "Mere disagreement" with the court's decision is not sufficient. *Id.* As discussed, there is no genuine doubt that the appreciable prejudice inquiry applies to the "occurrence-based" policy at issue here. The Court has found no New Jersey case, nor have Plaintiffs cited to any, in which a New Jersey court has ruled that the appreciable prejudice standard would not be applied in a case brought pursuant to an "occurrence-based" policy. Moreover, to the extent the *Gazis* Court indicated in dicta that New Jersey courts may not always apply the appreciable prejudice standard, it also indicated that the bases cited by Plaintiffs (sophistication and contracts that are not of adhesion) were not essential conditions.

As for the second question, the Court recognized in its April 5 order that "New Jersey courts have indicated that there is an open issue as to whether there is a 'good faith' prequalification to the appreciable prejudice doctrine." D.E. 43 at 3. While there is an absence of controlling law on this issue, an interlocutory appeal will not materially advance litigation. An appeal materially advances litigation if it would "eliminate the need for trial, complex issues, or issues that make discovery more difficult and more expensive." *N.J. Reg'l Council of Carpenters v. D.R. Horton, Inc.*, No. 08-1731, 2011 WL 1322204, at *5 (D.N.J. Mar. 31, 2011). Plaintiffs argue that if the Court of Appeals concludes that a good faith prequalification exists, it would materially advance the litigation because "the undisputed facts here establish Becton's lack of good faith as a matter of law." D.E. 45-1 at 12. Plaintiffs, however, have already made this argument and it was rejected by the Court in its April 5 order. There, the Court concluded that "good faith is a fact sensitive question" and "assuming that there is a good faith prequalification, whether Defendant failed to act in good faith" was a disputed issue of material fact. D.E. 43 at 3. Consequently, even if the Third Circuit agrees with Plaintiffs and concludes that there is good faith requirement, the parties will still be required to conduct discovery as to Defendant's lack of good faith. As a result, an interlocutory appeal will not materially advance the litigation. *See, e.g., Arias v. DynCorp*, 856 F. Supp. 2d 46, 54 (D.D.C. 2012) ("Any appeal will almost certainly prolong both the discovery period and the resolution of the litigation.").

Consequently, it would not be proper for the Court to certify an order for interlocutory appeal for either question proposed by Plaintiffs.

## CONCLUSION

For the foregoing reasons and for good cause, Plaintiffs' motion is denied in its entirety. An appropriate form of order accompanies this opinion.

Dated: July 12, 2016

John Michael Vazquez, U.S.D.J.