# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------

TRAVELERS CASUALTY AND
SURETY COMPANY and TRAVELERS
PROPERTY CASUALTY COMPANY
OF AMERICA,

                Plaintiffs,

   v.

BECTON DICKINSON AND
COMPANY,

              Defendant.

---------------------------------------------------

:
:
:
:
: Civil Action No.  2:14-cv-04410-
: JMV-JBC
:
:
:
:
:
:
: Return Date: August 7, 2017

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF APPEAL FROM MAGISTRATE JUDGE'S JUNE 20, 2017 ORDER

---

William T. Corbett, Jr.
Laura A. Brady
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel:  (973) 549-7000
william.corbett@dbr.com
laura.brady@dbr.com
*Counsel for Plaintiffs Travelers Casualty and Surety Company and Travelers Property Casualty Company of America*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ................................................................................1

PROCEDURAL HISTORY ..............................................................................2

ARGUMENT.....................................................................................................7

    I.     Standard of Review.........................................................................7

    II.    Travelers Is Entitled To BD's Privileged And Work-Product Materials Relating To The Litigation And Settlement Of The Underlying Actions ..........................................................................7

        A.    BD Created Travelers' Need For the Requested Materials By Placing In Issue the Quality of Its Defense Counsel's Advice and Work Product .......................................................8

        B.    The Privileged/Work Product Materials Sought Are Unquestionably Relevant ......................................................14

        C.    There Is No Less Intrusive Source for Information Contained Within Privileged Attorney-Client Communications and Counsel's Work Product .....................22

        D.    Even Without Waiver, Travelers Is Entitled To the Litigation and Settlement Materials Over Which Becton Claims Work Product Protection...........................................24

CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

Cooper v. Gov't Employees Ins. Co.,
   51 N.J. 86 (1968) ....................................................................................15, 19

Eisai Co. v. Teva Pharm. USA, Inc.,
   629 F. Supp. 2d 416 (D.N.J. 2009), as amended (July 6, 2009)........................7

Gazis v. Miller,
   186 N.J. 224 (2006) ......................................................................................15

Glenmede Trust Co. v. Thompson,
   56 F.3d 476 (3d Cir. 1995)...............................................................10, 14, 22

Griggs v. Bertram,
   88 N.J. 347 (1982) ........................................................................................17

Hager v. Gonsalves,
   398 N.J. Super. 529 (App. Div.), certif. den. sub nom., High Point
   Ins. Co. v. Rutgers Cas. Ins. Co., 195 N.J. 522 (2008) ...............................15, 17

Kinsella v. Kinsella,
   150 N.J. 276 (1997) ........................................................................................8

In re Kozlov,
   79 N.J. 232 (1979) ..............................................................................8, 22, 24

Lo Bosco v. Kure Eng'g Ltd.,
   891 F. Supp. 1035 (D.N.J. 1995).......................................................................7

Morales v. National Grange Mut. Ins. Co.,
   176 N.J. Super. 347 (Law Div. 1980)...............................................................18

Munich Reins. Am., Inc. v. Am. Nat. Ins. Co.,
   No. 09-6435 (FLW), 2011 WL 1466369 (D.N.J. April 18, 2011) .....................9

Ohaus v. Cont'l Cas. Ins. Co.,
   292 N.J. Super. 501 (App. Div. 1996).......................................................19, 21

Rhone-Poulenc Rorer Inc. v. The Home Ind. Co.,
   32 F.3d 851 (3d Cir. 1994)...........................................................................9, 13

Solvents Recovery Serv. of New England v. Midland Ins. Co.,
   218 N.J. Super. 49 (App. Div. 1987).....................................................19, 20, 21

State v. Mauti,
   208 N.J. 519 (2012) ...............................................................................8, 9, 13

United Jersey Bank v. Wolosoff,
   196 N.J. Super. 553 (App. Div. 1984).....................................................9, 10, 13

United States v. U.S. Gypsum Co.,
   333 U.S. 364 (1948)..................................................................................7

Weingarten v. Weingarten,
   234 N.J. Super. 318 (App. Div. 1989).......................................................14, 22

**Statutes, Rules & Regulations**

28 U.S.C. § 636(b)(1)(A) ...........................................................................7

Fed. R. Civ. P. 26.................................................................................8, 24

Fed. R. Civ. P. 72.................................................................................1, 7

Fed. R. Evid. 501 ..................................................................................8

## PRELIMINARY STATEMENT

Pursuant to Local Rules 72.1(c)(1) and 7.1, Plaintiffs ("Travelers") appeal from Magistrate Judge Clark's June 20, 2017 Order [D.E. 108] ("June 20 Order") denying Travelers' motion to compel discovery from Defendant ("Becton").

## STATEMENT OF FACTS

This action presents the question of whether Travelers owes insurance coverage to Becton for groups of antitrust lawsuits involving Becton's hypodermic products (such as needles and syringes) that Becton litigated and settled before tendering to Travelers. The first ("Retractable Action") was brought by a Becton competitor in Texas federal court in 2001 (with a predecessor state court action having been filed in 1998 and subsequently dismissed) and was settled by Becton for $100 million in July 2004. [D.E. 4 at ¶¶ 24-32]  Becton seeks coverage for the Retractable Action under general liability policies issued by Plaintiff Travelers Property Casualty Company of America (f/k/a The Travelers Indemnity Company of Illinois) to Becton for annual periods between October 1, 1993 and October 1, 1999.  [D.E. 9 ¶¶ 29,35]  Having settled in 2004, Becton tendered the Retractable Action to Travelers in June 2014.   Travelers declined coverage. [D.E. 9, Counterclaim ¶19]

The second group of suits ("Class Actions") were instituted between 2005 and 2007 by direct and indirect purchasers of Becton's hypodermic products.

Becton settled the direct-purchaser suits in April 2009 for $45 million, and the indirect-purchaser suits in July 2013 for $22 million. [Id. at¶¶ 13-23]  Becton seeks coverage for the Class Actions under general liability policies issued by Plaintiff Travelers Casualty and Surety Company (f/k/a Aetna Casualty and Surety Company) for annual periods between October 1, 1978 and October 1, 1988.  [D.E. 9 ¶¶ 7,30,36]

Becton tendered the Class Actions to Travelers in December 2013. Travelers initially declined but, following colloquy with Becton, withdrew its declination under the subject Aetna policies and reserved its rights. Travelers also requested information about the suits from Becton.  [D.E. 4-3] In response, Becton advised that "[u]nderlying defense counsel prepared no evaluations or status reports during the class action litigation" and the "underlying actions settled before the parties engaged in any discovery concerning any issue other than standing." [D.E. 4-4]

## PROCEDURAL HISTORY

Travelers filed this action in July 2014 and moved for judgment on the pleadings, arguing it owes no coverage for the Underlying Actions because Becton breached various policy conditions by handling and settling those actions before tendering them. [D.E. 12] Travelers contended, *inter alia*, that the New Jersey jurisprudence requiring a "likelihood of appreciable prejudice" be shown to void coverage based on an insured's conditions breach is not properly applied under the

post-settlement tender scenario presented here.  [D.E. 12-1 at 13-18]

Becton opposed, claiming Travelers must show "appreciable prejudice" and, to do so, must prove that it: (1) irretrievably lost substantial rights; and (2) would have defended successfully against the Underlying Actions. [D.E. 18 at 16-19] As to the latter, Becton argued Travelers could not have done better than Becton in those suits because Becton retained premier counsel to advise and defend it. [Id. at 20] Ruling for Becton, this Court found that New Jersey's "appreciable prejudice" rule applies to occurrence-based policies and there is "an open issue" on whether the rule has a "good-faith" prerequisite. The Court also found fact issues in dispute, including whether Travelers was "likely appreciably prejudiced" and, assuming a good-faith prerequisite, whether Becton acted in good faith. [D.E. 43 at 2-3]

Thereafter, the parties exchanged written discovery and served responses in July 2016. Travelers sought, among other things, information relevant to the fact issues identified in the Court's ruling on the Rule 12(c) motion: (i) as to "likelihood of appreciable prejudice," information regarding Becton's litigation and settlement of the Underlying Actions, including its communications with counsel and evaluations of strategy and the merits of the claims [Certification of William T. Corbett ("Corbett Cert.") Exhibit A, Travelers' First Set of Interrogatories to Becton ("Interrogatories")  8; Corbett Cert. Exhibit B, Travelers' First Set of Document Requests to Becton ("Document Requests") 5-8 and 10-18];

and (ii) as to Becton's purported "good faith," information concerning Becton's evaluation of potential coverage for those actions, [Corbett Cert. Exhibit A, Interrogatory 3; Corbett Cert. Exhibit B, Document Requests 19, 20 and 22]. By way of example, Travelers' Document Requests sought, among other things:

> 5. Any and all documents relating to internal communications within Becton regarding any one or more of the Underlying Lawsuits.

> [. . .]

> 11. As to each Underlying Lawsuit, any and all documents that relate to any settlement or attempted settlement of that lawsuit, including without limitation, any settlement demands or offers, any settlement agreements or drafts of settlement agreements, all documents relating to any settlement negotiations, any communications between Becton and any person relating to potential or actual settlement, and all internal Becton documents relating to Becton's evaluation and/or consideration of any and all possible settlement options.

> 12. As to each Underlying Lawsuit, any and all documents that relate to any evaluation of any aspect of the lawsuit, including without limitation, evaluations by lawyers (including but not limited to lawyers who were employees of Becton) and evaluations by nonlawyers as to the merits of the claims asserted therein and/or the possible amounts and likelihood of potential damage awards.

> 13. As to each Underlying Lawsuit, any and all documents that relate to any report of the progress of the lawsuit, including without limitation, progress reports delivered to Becton either verbally or in writing by lawyers (including but not limited to lawyers who were employees of Becton) and progress reports disseminated either verbally or in writing internally within Becton.

> [. . .]

4

[Corbett Cert., Exhibit B at 5, 11-13]   Becton objected, invoking attorney-client privilege and work-product immunity. [Id.; D.E. 81 at 1-3] The parties corresponded regarding their written responses, met and conferred, and presented the unresolved written discovery issues to the magistrate, who permitted formal briefing. [D.E. 79-82, 88]

Accordingly in November 2016, Travelers filed a motion to compel Becton to produce documents and information relating to the litigation and settlement of the Underlying Actions that Becton claimed were immune from discovery on grounds of attorney-client privilege and/or the work product doctrine.  [D.E. 93-1 at 2]  In support, Travelers pointed to express argument from Becton in its Rule 12(c) motion briefing pertaining to its premier counsel that placed such privileged materials in issue.  [Id. at 4-5]  Travelers also sought to compel Becton to produce documents and information relating to Becton's evaluation of potential insurance coverage for the Underlying Actions.  [Id. at 3]  As to this second category, Travelers limited its argument to Becton's work product objections in recognition of the fact that Becton had not taken any express position within the litigation to place such matters "in issue" so as to warrant abrogation of privilege.[1] [Id. at 1,10]

The magistrate denied Travelers' motion in a June 20 Order.  [D.E. 108]  As

---

[1] Travelers reserved any argument it might have with respect to withholding of such information/documents on privilege grounds, pending its review of BD's anticipated privilege log.  [D.E. 93-1 at 10]

5

to the request for privileged materials relating to the litigation and settlement of the Underlying Actions, the magistrate reasoned that even assuming Becton's litigation statements "affirmatively placed the privileged documents 'at issue'," denial was warranted for two reasons:  (1) The information sought is not relevant to a showing of appreciable prejudice, because "[t]he effectiveness of Becton's counsel is not material to this inquiry.  The focus of the inquiry is what Travelers would have done faced with the same lawsuit."  Id. at 6; and (2) The information Travelers seeks is available from non-privileged sources.  Id.  The magistrate further denied as moot the portion of the motion seeking information related to Becton's evaluation of potential coverage for the Underlying Actions, based on Becton's representation that the only information it would be withholding in that category consisted of communications between Becton and its counsel in this action.  Id. at 7.

Travelers now appeals the portion of the June 20 Order that denied Travelers' request to compel the production of materials related to the litigation and settlement of the Underlying Actions.

## ARGUMENT

**I.      Standard of Review.**

Pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(c), a party may appeal non-dispositive orders of magistrate judges to district judges. See Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). Under Rule 72(a), the "district judge . . . shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." See also 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

A magistrate judge's determination is "clearly erroneous" when, although there may be "evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed."  Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1035, 1037 (D.N.J. 1995) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  The district court's review of a magistrate judge's legal conclusions, on the other hand, is de novo. Eisai Co. v. Teva Pharm. USA, Inc., 629 F. Supp. 2d 416, 424 (D.N.J. 2009), as amended (July 6, 2009).

**II.     Travelers Is Entitled To BD's Privileged And Work-Product Materials Relating To The Litigation And Settlement Of The Underlying Actions.**

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.  In this case,

as illustrated by the Rule 12(c) motion briefing, the parties agree that New Jersey law governs.  [D.E. 12-1 at 1; D.E. 18 at 1]

As explained in In re Kozlov, 79 N.J. 232 (1979), New Jersey law provides that privileged information can be discovered if it is found that it is legitimately needed, relevant and material to the action, and could not be secured from a less-intrusive source. State v. Mauti, 208 N.J. 519, 523 n.1 (2012) (citing Kozlov, 79 N.J. at 243-44).[2]  The "need prong" of the test can be satisfied where "a party has explicitly or implicitly waived the privilege" by "placing an otherwise protected matter in issue." Id. at 538 (citing Kinsella v. Kinsella, 150 N.J. 276, 300 (1997)). The litigation and settlement-related information sought by Travelers unquestionably satisfies these parameters.  The magistrate's decision finding otherwise was both clearly erroneous and contrary to Kozlov and its progeny.

### A.   BD Created Travelers' Need For the Requested Materials By Placing In Issue the Quality of Its Defense Counsel's Advice and Work Product.

We first address the "need" prong of the inquiry.  The magistrate assumed, *arguendo*, that this prong was satisfied by litigation positions taken by Becton. [D.E. 108 at 5]  The facts and the law sustain a finding to that effect.

As noted above, New Jersey Supreme Court case law dictates that a party

---

[2] Rule 26(b) similarly provides for production of work product materials within the proper scope of discovery where the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. R. 26(b)(3)(A)(ii).

8

can waive privilege by "placing an otherwise protected matter in issue." Mauti,
208 N.J. at 539 (citation omitted); see United Jersey Bank v. Wolosoff, 196 N.J.
Super. 553, 566 (App. Div. 1984) ("evidentiary privileges are waived when the
information sought is highly germane to a critical issue raised by the party seeking
to invoke it"). This Court likewise recognizes that there exists "an implied waiver
of the attorney-client and/or attorney work product privilege where a client
affirmatively places otherwise privileged information at issue in the case." Munich
Reins. Am., Inc. v. Am. Nat. Ins. Co., No. 09-6435 (FLW), 2011 WL 1466369, at
*22 (D.N.J. April 18, 2011) (applying New York law) (internal quotations
omitted).  This "in issue" doctrine is grounded in the idea that a "party who places
a confidential communication in issue voluntarily creates the 'need' for disclosure
of those confidences to the adversary." Mauti, 208 N.J. at 532. The Third Circuit
explains:

> Finding a waiver of the attorney client privilege when the client puts
> the attorney's advice in issue is consistent with the essential elements
> of the privilege.  That is, in leaving to the client the decision whether
> or not to waive the privilege by putting the attorney's advice in issue,
> we provide certainty that the client's confidential communications
> will not be disclosed unless the client takes an affirmative step to
> waive the privilege, and we provide predictability for the client
> concerning the circumstances by which the client will waive that
> privilege.

Rhone-Poulenc Rorer Inc. v. The Home Ind. Co., 32 F.3d 851, 863 (3d Cir. 1994).

Of note, the waiver in such a circumstance is not limited to a single

communication or fact that the disclosing party chooses to reveal. Rather, courts in New Jersey and this Circuit recognize that when a party makes a claim that places attorney-client information "in issue," the court must address concerns of fairness and permit the disclosure of sufficient information to allow the other side to test that claim. See Wolosoff, 196 N.J. Super. at 566-67; Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486 (3d Cir. 1995) (finding party could not selectively reveal privileged documents when relying upon advice of counsel).

Here, through its own voluntary affirmative steps, Becton waived any privilege and work-product protection that might otherwise apply to its communications with its defense counsel and its counsel's analysis regarding the litigation and settlement of the Underlying Actions. Becton litigated those actions to conclusion before requesting insurance coverage from Travelers and, when Travelers sued, asserted an affirmative defense claiming "Plaintiffs cannot meet their burden of proving appreciable prejudice arising from any alleged untimely notice of the underlying action." [D.E. 9 at 10]  Becton expanded its reliance on that doctrine in opposing Travelers' Rule 12(c) motion, arguing that Travelers must demonstrate a "likelihood of appreciable prejudice" in connection with its conditions-based defenses and can make that showing only by proving: (1) that it irretrievably lost substantial rights; and (2) it would have achieved a better outcome than that secured by Becton in the Underlying Actions. [D.E. 18 at 10-19]

It is the second point, in particular, which markedly calls for application of the "in issue" waiver doctrine. Becton expressly argues that Travelers could not have done better than Becton did in the underlying suits because Becton retained world-renowned counsel to conduct its defense. [Id. at 20]  In fact, it made this claim in its Preliminary Statement in opposition to Travelers' Rule 12(c) motion, arguing: "Travelers . . . cannot possibly prove it likely would have defended successfully against the underlying actions.  Becton litigated and resolved the underlying actions using one of the best law firms in the country." [Id. at 1]

That brief then goes on to describe that firm, Paul Weiss, as "a well-reputed law firm of more than 800 lawyers whose clients include many of the largest publicly and privately held corporations and financial institutions in the United States and throughout the world." [Id. at 20]  It contends that Travelers "cannot[] allege it would have hired better counsel or achieved a better outcome than that secured by Paul Weiss." [Id.]  Notably, this praise by Becton of its defense counsel is offered to sustain its claim that Travelers "fails completely to prove it suffered appreciable prejudice." [Id.]

By asserting this position, Becton places directly in issue its communications with its defense counsel, and defense counsel's work product, as to the claims asserted in the Underlying Actions.  Essentially, Becton asks the Court to accept that the outcomes it obtained in the Underlying Actions are unassailable by

11

Travelers because Becton had such esteemed and expensive lawyers representing it. The only way to challenge that assertion is to examine how those lawyers handled the cases throughout the litigations, including any information to which the lawyers were privy. Only then can Travelers (and this Court) evaluate whether the reputation Becton touts in fact translated to excellent lawyering as Becton urges.

Such an examination of the handling of the underlying suits is of course not complete without a review of privileged as well as non-privileged materials. A simple example serves to illustrate why not. Assume that Becton and its counsel exchanged various communications regarding counsel's analysis of the merits of the underlying claims and the damages that might be awarded, and Becton premised its determination to settle, in part or in whole, on such analysis. Becton would have this Court conclude that its counsel's advice (and hence, Becton's settlement calculus) was sound because the firm with which its counsel is affiliated has a good reputation. To test whether that conclusion is warranted, Travelers must have the opportunity to look at the actual advice and evaluate it on its merit.

As another example: Assume Becton's counsel interviewed a potential witness who provided information advantageous to Becton, drafted a memorandum summarizing that interview and later determined not to utilize the witness. Unless that information is memorialized elsewhere, counsel's memorandum -- which

Becton would withhold on work product and/or privilege grounds -- is the only contemporaneous evidence of what that witness knew.  Without reviewing that memorandum, Travelers will not learn of the information that Becton's counsel determined not to proffer in the case.  The same conclusion would hold true with respect to any information conveyed in a privileged communication between Becton and counsel that is documented only in counsel's file.  Travelers will not be privy to that information without seeing the privileged communication.

As succinctly stated by the Appellate Division, "evidentiary privileges are waived when the information sought is highly germane to a critical issue raised by the party seeking to invoke it."  Wolosoff, 196 N.J. Super. at 566.  Here, Becton injected the quality of its counsel's advice and work product as relevant to the "appreciable prejudice" inquiry.  Its privileged communications with counsel and counsel's work product are "highly germane" to Travelers' ability to test the issue raised by Becton.

It bears repeating that it was Becton -- not Travelers -- that raised the quality of defense counsel's work as a matter worthy of consideration in this case. [D.E. 18 at 10-20]   It is Becton's determination to take that "affirmative step" that requires that Travelers be afforded access to the information necessary to rebut it. See Rhone-Poulenc Rorer, 32 F.3d at 863; see also Mauti, 208 N.J. at 539 ("need" test satisfied when by a party "placing an otherwise protected matter in issue")

13

(citation omitted)).

Indeed, this bears analogy to cases where reliance on the advice of counsel waives privilege. For example, in Weingarten v. Weingarten, 234 N.J. Super. 318, 327 (App. Div. 1989), a wife in divorce proceedings waived attorney-client privilege because she claimed her husband's representations caused her not to follow her attorney's advice, begging the question of what that advice was. Id.; see Glenmede Trust, 56 F.3d at 486 ("The party opposing the defense of reliance on advice of counsel must be able to test . . . whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client."). This is what Becton does here: confronted by a claim of breach, it asserts Travelers was not prejudiced because its counsel's advice and work product in the Underlying Actions was unimpeachable. This argument places that advice and work product at issue.

The magistrate did not disagree with Travelers on the "in issue" point and instead assumed its correctness for the sake of argument.  He denied the motion, though, because he concluded that the next two prongs of the Koslov test were not satisfied.   Those conclusions were clearly erroneous and contrary to law as outlined below.

### B.    The Privileged/Work Product Materials Sought Are Unquestionably Relevant.

First, the June 20 Order concludes that the information sought by Travelers

14

is not relevant to the "likelihood of appreciable prejudice" showing.  The finding of lack of relevance was clearly erroneous both in its ultimate conclusion and its premise that Travelers had not argued relevance.  It was also premised on a clear error of law in its applicable of New Jersey case law on proving "appreciable prejudice."

Before discussion of those points, we address a threshold legal point.  The June 20 Order makes reference to Travelers being required to "prove appreciable prejudice."  [D.E. 108 at 5]  As recognized by this Court's ruling on Travelers' Rule 12(c) motion, the required showing is a "likelihood of appreciable prejudice." [D.E. 43 at 3 (noting fact issue on "whether Plaintiffs were likely appreciably prejudiced. . .")]  See Gazis v. Miller, 186 N.J. 224, 228 (2006) (carrier may not forfeit coverage unless it provides "a breach of the notice provision and a likelihood of appreciable prejudice") (quoting Cooper v. Gov't Employees Ins. Co., 51 N.J. 86, 94 (1968)).  To the extent it indicates that the "appreciable prejudice" rule requires proof of actual prejudice rather than a "likelihood of appreciable prejudice," the June 20 Order is contrary to law.

Turning to the substance of the relevance analysis, as explained in Travelers' application to the magistrate, the privileged information Travelers seeks is critical to the aspect of the "appreciable prejudice" inquiry dealing with the insurer's likelihood of success on the underlying claim.  See Hager v. Gonsalves, 398 N.J.

15

Super. 529, 537 (App. Div.) (two factors "generally" considered in "likelihood of appreciate prejudice" analysis are whether substantial rights have been irretrievably lost as a result of the insured's breach and the insurer's likelihood of success in the underlying case had there been no breach), <u>certif. den. sub nom.</u>, <u>High Point Ins. Co. v. Rutgers Cas. Ins. Co.</u>, 195 N.J. 522 (2008)).[3]  We reiterate that explanation here.

Travelers first argued generally that "[t]he materials Travelers seeks pertain squarely to [Becton's] claim that Travelers cannot make the requisite 'appreciable prejudice' showing because [Becton] had high quality lawyers defending it."  [D.E. 93-1 at 5]   It then added specific examples of inquiries on which the subject privileged information is relevant, contending:

> Travelers must be allowed to review complete files with respect to the defense and settlement of the underlying actions.  As to defense: Did Paul Weiss and BD consider all of the avenues of litigation strategy available? Did they elect to pursue those that would achieve the optimal outcome? Did Paul Weiss and/or BD eschew any options that would have positioned the case more favorably? As to settlement: Were the settlements consistent with counsel's evaluation of the merits of the claims and the potential damages that BD faced? Did BD interpose any business considerations -- *i.e.*, considerations not related to its actual liability, but to its relationship with business partners or its reputation in the marketplace, for example -- in determining to settle?

---

[3] We should note here Travelers' disagreement with the magistrate's conclusion that the "appreciable prejudice" showing requires proof of <u>both</u> (1) irretrievable loss of substantial rights; and (2) likelihood of success on the merits in the underlying case.  [D.E. 108 at 5]  As Travelers' Rule 12(c) motion argued, various New Jersey courts have found a "likelihood of appreciable prejudice" without considering both factors. [D.E. 12-1 at 19-21]

[Id. at 7-8]

Travelers also pointed to Becton's argument that Travelers cannot show "appreciable prejudice" because it cannot prove the underlying settlements were unreasonable, collusive or in bad faith.  [D.E. 93-1 at n.3 (citing D.E. 18 at 19)] Travelers explained that the privileged litigation materials were relevant to that issue, contending:  "To test these elements, *particularly the good faith component*, Travelers also requires access to the discussions between [Becton] and its counsel in determining to settle those cases." [Id. (emphasis added)]; see Griggs v. Bertram, 88 N.J. 347, 364 (1982) (settlements made without insurer's involvement not covered if they were not reasonable or entered into in good faith).  Travelers later elaborated that "documents exchanged between [Becton] and its adversaries will not contain any revelations about how [Becton] and its counsel candidly evaluated the claims and damages [Becton] faced – information *directly relevant* to the reasonableness and good faith of the settlements." [D.E. 93-1 at 8 (emphasis added)]

As these excepts reveal, Travelers' motion had a number of explanations of the relevance of the requested privileged and work-product information to the "appreciable prejudice" inquiry, all of which remain valid today.  It was clearly erroneous for the magistrate to overlook those explanations and find no relevance to the information sought.

Furthermore, the magistrate's holding on this relevance point is driven by an error of law.  In particular, the June 20 Order determines that in the "appreciable prejudice" analysis, "[t]he question is not what [Becton] did, but what Travelers could have done, but for the untimely notice."  [D.E. 108 at 6 (citing Morales v. National Grange Mut. Ins. Co., 176 N.J. Super. 347, 356 (Law Div. 1980)]  The Morales decision does not support the magistrate's blanket rule that the insured's and its counsel handling of the underlying litigation are irrelevant to the "appreciable prejudice" inquiry.

Morales, a Law Division case decided in 1980, applied the "appreciable prejudice" rule in the context of a lawsuit arising out of an automobile accident where the insurer was not notified before entry of default judgment against the insured.  The court noted:

> The second factor considered by most courts in determining whether appreciable prejudice exists pertains to the likelihood of success of the insurer in defending against the accident victim's claim.  In some cases the liability of the insured and the resulting damages are so clear that it would be unfair to preclude the plaintiff from recovering against the carrier.  For that reason the carrier should be required to show the likelihood that it would have had a meritorious defense had it been informed of the accident in a timely fashion.

Id. at 356.

That articulation of the analysis -- in the context of a default judgment entered in a personal-injury lawsuit arising out of an automobile accident -- does not translate to this case involving complex antitrust litigations settled for,

18

collectively, $167 million.  As a result of Becton's unexplained delay in tendering the underlying suits (one of which was not tendered until nearly ten years after settlement), Travelers is tasked with re-creating the litigation of these long-settled complex cases to demonstrate that it could have achieved better outcomes than the settlements secured by Becton without Travelers' involvement.  Contrary to the June 20 Order, in such a context, New Jersey law dictates that an insurer must be permitted access to the entirety of the underlying litigation file.

For example, in Solvents Recovery Serv. of New England v. Midland Ins. Co., 218 N.J. Super. 49, 53 (App. Div. 1987), an insured failed to inform its insurer of a settlement and a liability judgment in the context of environmental remediation claims. Upon being informed of the settlement and judgment, the insurer declined coverage as a result of late notice. Id. In an appeal of the ensuing declaratory action, the Appellate Division found that under Cooper, the insurer was required to "bear the burden of persuasion of a likelihood of appreciable prejudice." Id. In order to give the insurer the opportunity to accomplish that, the Appellate Division held that "[t]hrough discovery [the insurer] should have access to all of the facts including what action the insured and others have taken to protect their mutual interests" so it could determine "[i]f there were any conflicts, dereliction or action which may have affected the result the carrier might have obtained**."** Id. at 55; see also Ohaus v. Cont'l Cas. Ins. Co., 292 N.J. Super. 501,

512 (App. Div. 1996) (noting that although insured agreed to assume environmental cleanup expenses without notice to its insurer, insurer was nonetheless obligated to indemnify for those expenses because it could not show "those expenses were unnecessary or excessive").

Here, permitting Travelers only the filtered view of the underlying litigation available for public consumption simply does not provide it with "all of the facts" as mandated by the Appellate Division.  See Solvents Recovery, 218 N.J. Super. at 53. Rather, to satisfy that dictate here, Travelers must be given access to all of the information available to and considered by Becton and its counsel in the course of the litigating and settling the Underlying Actions, whether that information is set forth in privileged documents or not.  This is so, because any decision taken in the course of the defense or settlement of a lawsuit is necessarily informed by an unfiltered, plain view of the available information.  Without being privy to the entirety of the information in the possession of Becton's counsel at the time they were litigating the Underlying Actions, Travelers cannot fairly evaluate the full breadth of options that would have been available to it had been permitted to participate in those litigation efforts.  Contrary to the magistrate's conclusion, Solvents demonstrates the unquestionable relevance under the law of the documents Becton has placed at issue.

Moreover, without access to counsel's work product and its communications

with Becton regarding the litigation and settlement of the underlying actions, Travelers cannot fairly evaluate whether there were any "conflicts, dereliction or action" on the part of Becton or its counsel that might have affected the results that could have been obtained.  See id. at 55.  Again, take the example of a documented interview of an individual that Becton determined not to proffer as a witness. Without seeing those interview notes, how can Travelers assess whether the determination not to offer that witness was a "dereliction" affecting the case outcome?

For these reasons, any re-creation of "likelihood of success" will be incomplete if Travelers is denied access to some portion of the information that was available to Becton and its counsel at the time litigation strategy and settlement decisions were being made.  New Jersey law does not support the magistrate's determination that the "appreciable prejudice" analysis does not involve consideration of the conduct of the defense of the underlying action. See Solvents Recovery, 218 N.J. Super. at 55; Ohaus, 292 N.J. Super. at 512.

A final point is worth reiterating here:  Becton itself takes the position that Travelers cannot prevail on its conditions-based defenses unless it can prove that it would have "achieved a better outcome that that secured by Paul Weiss."  [D.E. 18 at 20]   The June 20 Order denies Travelers' access to information necessary to combat this very argument proffered by Becton.  The privileged and work-product-

protected information Travelers seeks is unquestionably relevant and the holding to the contrary is clearly erroneous and contrary to law.

### C. There Is No Less Intrusive Source for Information Contained Within Privileged Attorney-Client Communications and Counsel's Work Product.

The June 20 Order is also clearly erroneous in its conclusion that Travelers has not satisfied the third element of <u>Koslov</u>. That element requires that, before privilege may be pierced, the requesting party must show that there is no less intrusive source from which to obtain the requested information**.**  79 N.J. at 244 (citation omitted).  The circumstances here establish that factor.

As noted above, Becton's claim that Travelers cannot show prejudice because Becton was represented in the Underlying Actions by "one of the best law firms in the country" is akin to an advice of counsel claim.  [D.E. 18 at 1, 20]  With an advice of counsel defense, the only way to test the factual premise of the defense is to have access to the advice itself. <u>See</u> <u>Weingarten</u>, 234 N.J. Super. at 327; <u>Glenmede Trust</u>, 56 F.3d at 486.  So too here.  Without access to the information exchanged between Becton by its counsel, and to counsel's work product reflecting the information available to it and its analysis of the claims and defenses at issue, Travelers is deprived of critical factual sources for testing Becton's arguments based on the quality of its lawyers.

The magistrate agreed with Becton that Travelers can evaluate Becton's

handling of the Underlying Actions by looking at the pleadings and discovery from those actions. [D.E. 81 at 2-3]   He reasoned: "The [non-privileged litigation] documents themselves evidence the strategy and actions taken by BD for which Travelers can make their comparison."   [D.E. 108 at 6]   That conclusion is clearly erroneous because such documents unquestionably provide only half the story.

While   public   and   non-privileged   pleadings   and   correspondence   will demonstrate  what  steps  Becton  opted  to  pursue,  they  will  not  disclose  what approaches  were  evaluated  and  rejected  (and,  relatedly,  any  factual  information pertaining  to  such  evaluations  that  may  be  only  available  in  counsel's  file). Similarly,  unlike  documents  intended  for  internal  viewing  only,  documents exchanged  between  Becton  and  its  adversaries  will  not  contain  any  revelations about  how  Becton  and  its  counsel  candidly  evaluated  the  claims  and  damages Becton faced.  As noted above, such information is unquestionably relevant to the reasonableness and good faith of the settlements – which Becton itself recognizes as a matter pertinent to the "appreciable prejudice" inquiry. [D.E. 18 at 19]

Becton's refusal to provide this material here is particularly problematic because  it  follows  from  Becton's  wholesale  breach  of  the  subject  policies' cooperation clauses – a clause that would, in cases of proper notice, preserve an insurer's access to this type of information.  Becton did not afford Travelers the opportunity to participate in the Underlying Actions' defense, thereby removing

any possibility for Travelers to make reasonable inquiries of defense counsel -- the persons most intimately involved -- as to the basis for liability and damages. Moreover, Becton has informed Travelers that, as to the Class Actions, no such evaluations exist. [D.E. 4-4] The only way to now receive that contemporaneous, self-critical analysis is to examine the internal discussions which informed the defense strategy.

For these reasons, Travelers' application for Becton's litigation and settlement-related materials satisfies all of the components of the Koslov test as well as the New Jersey case law discussed above concerning the "in issue" doctrine. The June 20 Order was contrary to that law and clearly erroneous as outlined above and should be reversed by this Court.

## D.   Even Without Waiver, Travelers Is Entitled To the Litigation and Settlement Materials Over Which Becton Claims Work Product Protection.

Insofar as Becton invokes work-product to avoid producing the requested litigation- and settlement-related materials, the waiver principles addressed above mandate that disclosure is warranted. Notably, though, even without explicit or implicit waiver, work-product protection is not inviolate. Rule 26(b)(3)(A) provides that materials prepared in anticipation of litigation are discoverable if they are "otherwise discoverable under Rule 26(b)(1)" and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue

24

hardship, obtain their substantial equivalent by other means." <u>Fed. R. Civ. P.</u> 26(b)(3)(A). These factors track those of the <u>Kozlov</u> test and for the reasons argued above, are satisfied here.

## **CONCLUSION**

For the foregoing reasons, Travelers respectfully requests that this Court reverse the portion of the June 20 Order that denies Travelers' motion for production of the litigation- and settlement-related materials over which Becton claims privilege and work product protection.

Dated: July 5, 2017    By: /s/ *William T. Corbett, Jr.*
           William T. Corbett, Jr.
           Laura A. Brady
           DRINKER BIDDLE & REATH LLP
           600 Campus Drive
           Florham Park, New Jersey 07932-1047
           Tel:  (973) 549-7000
           william.corbett@dbr.com
           laura.brady@dbr.com
           *Counsel for Plaintiffs Travelers*
           *Casualty and Surety Company and*
           *Travelers Property Casualty Company*
           *of America*