**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>*Plaintiffs*,<br><br>v.<br><br>BECTON DICKINSON AND COMPANY,<br><br>*Defendant*. | Civil Action No. 14-4410<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on two appeals from Magistrate Judge James B. Clark's opinions and orders concerning discovery in this matter. Plaintiffs Travelers Casualty and Surety Company and Travelers Property and Casualty Company of America (collectively "Plaintiffs") first filed an appeal, D.E. 110, of Judge Clark's Opinion and Order, D.E. 108, denying Plaintiffs' motion to compel Defendant's production of privileged documents concerning the underlying lawsuits and settlements at issue in this matter. Judge Clark's Opinion and Order (the "2017 Opinion") was issued on June 20, 2017. D.E. 108. Defendant filed a brief in opposition to Plaintiffs' appeal, D.E. 111, to which Plaintiffs replied. D.E. 112.

Plaintiffs then filed a second appeal, D.E. 133, of Judge Clark's Opinion and Order, D.E. 128, denying Plaintiffs' application to bifurcate and stay discovery related to Defendant's bad faith counterclaim. D.E. 133. Judge Clark's Opinion and Order (the "2018 Opinion") was issued on

February 6, 2018. D.E. 128. Defendant filed a brief in opposition to Plaintiffs' appeal, D.E. 141, to which Plaintiffs replied. D.E. 143.[1]

The Court reviewed all submissions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiffs' appeals are **DENIED**.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As noted, the 2017 Opinion denied Plaintiffs' motion to compel production of Defendant's privileged documents relating to underlying litigation and settlements. Opinion (2017) at 6; D.E. 208. The 2018 Opinion denied Plaintiffs' motion to bifurcate and stay discovery related to Defendant's bad faith counterclaim. Opinion (2018) at 9; D.E. 128. The Court does not retrace this case's full factual and procedural history, which are fully developed in the 2017 Opinion and 2018 Opinion. The following is a summary of this matter.

This case arises out of an insurance coverage dispute. For the relevant years of 1978 through 1999, Plaintiffs provided Defendant with "occurrence-based" insurance policies. Amended Complaint ("Am. Comp.") ¶¶ 33, 42; D.E. 4. During the coverage period, Plaintiffs allege that Defendant settled several lawsuits and years later belatedly tendered the lawsuits to Plaintiffs for insurance coverage.[2] *Id.* ¶¶ 13-32, 52-62. Plaintiffs filed suit for declaratory relief,

---

[1] In this Opinion, Plaintiffs' brief in support (D.E. 110) of their appeal of the 2017 Opinion will hereinafter be referred to as "Pl. Brf. 2017." Defendant's brief in opposition (D.E. 11) to Plaintiffs' appeal will hereinafter be referred to as "Def. Opp. 2017." Plaintiffs' reply (D.E. 112) in further support of their appeal will hereinafter be referred to as "Pl. Rep. 2017." Plaintiffs' brief in support (D.E. 133) of their appeal of the 2018 Opinion will hereinafter be referred to as "Pl. Brf. 2018." Defendant's brief in opposition (D.E. 141) to Plaintiffs' appeal will hereinafter be referred to as "Def. Opp. 2018." Plaintiffs' reply (D.E. 143) in further support of their appeal will hereinafter be referred to as "Pl. Rep. 2018."

[2] The underlying lawsuits consist of class actions, with the first being filed in 2005, and with settlements occurring in 2009 and 2013. The underlying lawsuits also included an anti-trust

2

asserting that Defendant's breaches of the coverage policies precluded Defendant from recouping any amounts related to the underlying lawsuits. The central dispute is whether Plaintiffs owe Defendant insurance coverage for the settled lawsuits.

In November 2016, Plaintiffs filed a motion to compel Defendant's production of privileged documents related to the underlying settlements. D.E. 93. In denying this motion, Judge Clark found, in part, as follows:

> Assuming *arguendo* that these statements affirmatively placed the privileged documents "at issue", thereby satisfying the first prong of *Koslov's* waiver analysis, Travelers' arguments nevertheless fail on the remaining prongs.
> . . .
> Travelers does not address the second prong of the *Koslov* analysis—whether the documents are relevant and material to the issues before the Court.
> . . .
> Even if the requested information was relevant and material, this same information can be obtained from far less intrusive non-privileged sources, including pleadings, motions, depositions transcripts, communication between opposing counsel, and discovery produced in the [u]nderlying [a]ctions.

Opinion (2017) at 5-6; D.E. 108.

In May 2016, Plaintiffs filed a letter brief seeking to bifurcate and stay discovery on Defendant's bad faith counterclaim. D.E. 54. In denying this motion, Judge Clark found that bifurcating and staying bad faith discovery in this matter would be an affront to judicial economy and not serve the interests of the parties or Court. In doing so, Judge Clark discussed several factors, including the age of the case, the contentious nature of the relationship between the parties, the significant overlap in the discovery needed for the parties' coverage claims and for Defendant's

---

action originating in 1998 (resulting in dismissal), a related anti-trust action filed in federal court in 2001, and a 2004 settlement. Plaintiffs allege that Defendant did not tender the class action lawsuits until 2013 or the anti-trust matter until 2014. Am. Comp. ¶¶ 13-32, 52-62.

3

bad faith claim, and the likelihood that bifurcating discovery would result in numerous disputes regarding whether a discovery request (or deposition question) relates to the issue of coverage or that of bad faith. Opinion (2018) at 6-8; D.E. 128.

## II. LEGAL STANDARD

A magistrate judge may hear and determine any non-dispositive pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A). A district court may only reverse a magistrate's decision on these matters if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotations omitted). Under this standard, a district court "will not reverse the magistrate judge's determination even if the court might have decided the matter differently." *Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002). The court will, however, "conduct a *de novo* review of a magistrate judge's legal conclusions." *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998).

"Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Miller v. P.G. Lewis & Assocs., Inc.*, No. 05-5641, 2006 WL 2770980, at *1 (D.N.J. Sept. 22, 2006). An abuse of discretion occurs "when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." *Ebert v. Twp. of Hamilton*, No. 15-7331, 2016 WL 6778217, at *2 (D.N.J. Nov. 15, 2016).

4

## III. LEGAL ANALYSIS

### A. Plaintiffs' Motion for Privileged Discovery

Plaintiffs make several arguments to support their appeal of Judge Clark's 2017 Opinion. First, Plaintiffs claim that Defendant waived any privilege and work product protection applicable because Defendant placed the information "in issue." Pl. Brf. 2017 at 9-14. Second, Plaintiffs assert that Judge Clark misanalysed the "appreciable prejudice" standard. *Id.* at 18. Specifically, Plaintiffs argue that "the privileged information Travelers seeks is critical to the aspects of the "appreciable prejudice" inquiry dealing with the insurer's likelihood of success on the underlying claim." *Id.* at 15. Third, and finally, Plaintiffs assert that there is no less intrusive source for the privileged information sought. *Id.* at 22-24.

A federal court sitting in diversity applies state law when deciding issues of privilege. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994). Here, New Jersey law applies. New Jersey courts allow privilege to be pierced when three factors are met: (1) the party seeking to pierce the privilege has a legitimate need for the privileged information; (2) the information is relevant and material to the issue(s) before the court; and (3) the party cannot obtain the information from any less intrusive source. *Matter of Kozlov*, 79 N.J. 232, 243 (1979). Judge Clark and the parties agree that the *Kozlov* factors govern, but disagree over the application of the factors to the present facts.

In the 2017 Opinion, Judge Clark provided a convincing analysis for finding that Plaintiffs failed to sufficiently address the second and third *Kozlov* factors. Opinion (2017) at 5-7; D.E. 108. Judge Clark found that Plaintiffs failed to sufficiently address relevance and materiality because Plaintiffs did not sufficiently demonstrate "appreciable prejudice." *Id.* at 5. Appreciable prejudice required consideration of "(1) whether substantial rights have been 'irretrievably lost' by the late

5

notice and (2) whether the insurer can demonstrate that it would have had a meritorious defense had there been timely notification." *Cont'l Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1048 (D.N.J. 1993) (citing *Morales v. Nat'l Grange Mut. Ins. Co.*, 176 N.J. Super. 347, 355 (Law. Div. 1980)). Analyzing the "likelihood of success" prong, Judge Clark found that Plaintiffs did not address their claims of appreciable prejudice. *Id.* at 6. Instead, Judge Clark noted that Plaintiffs appeared to be attempting "to bolster its arguments by reviewing *all* of the actions and decisions made by [Plaintiff's] counsel, and then arguing that it could have done better." *Id.* Judge Clark concluded that this attempt was insufficient to show the relevance and materiality of the information sought. The Court finds no error in Judge Clark's well-reasoned analysis.

Further, Judge Clark found that "[e]ven if the requested information was relevant and material, this same information can be obtained from far less intrusive non-privileged sources." *Id.* at 6. Judge Clark pointed Plaintiffs to a number of sources where they could attempt to find the information sought, including "pleadings, motions, depositions transcripts, communications between opposing counsel, and any discovery produced in the [u]nderlying [a]ctions." *Id.* In response, Plaintiffs assert that only internal documents will include the candid evaluations of claims and damages that they need. Pl. Brf. 2017 at 23; D.E. 110.

Plaintiffs' argument is unconvincing. Judge Clark carefully walked through New Jersey's legal standard for a party seeking discovery of privileged information. He then applied that standard to the facts of this case. Plaintiffs failed to provide Judge Clark with evidence that they had attempted to find less intrusive sources from which to get the relevant information. Nor did Plaintiffs adequately demonstrate that such alternate sources were insufficient for them to assess the underlying litigation. The 2017 Opinion provides clear and appropriate reasons for denying Plaintiffs' motion to compel Defendant's discovery of privileged information. This Court finds

that Judge Clark's decision was not an abuse of discretion, clearly erroneous, or contrary to law as to either the second or third prong of *Kozlov*.

### B. Plaintiffs' Motion to Bifurcate and Stay Defendant's Bad Faith Counterclaim

Plaintiffs next allege that Judge Clark committed clear error in the 2018 Opinion when he denied their motion to bifurcate discovery. Pl. Brf. 2018 at 9; D.E. 133. First, Plaintiffs claim that New Jersey law controls this decision and under New Jersey law "a policyholder should not be permitted to engage in discovery related to a bad faith claim until such time as it has established as a matter of law that it was entitled to coverage." *Id.* at 5. Second, Plaintiffs argue that even if Rule of Civil Procedure 42(b) controls here, Judge Clark should not have used his discretion "to ignore substantive state law from the controlling jurisdiction in diversity cases." *Id.* at 10. Finally, and confusingly given their original argument, Plaintiffs claim that a court addressing bifurcation has discretion under Federal Rule of Civil Procedure 26(d)(2) in addition to Federal Rule of Civil Procedure 42(b). *Id.* at 12.

The Court disagrees. Judge Clark determined that Federal Rule of Civil Procedure Rule 42(b) guides a court's determination of whether to bifurcate a bad faith discovery claim because it is a procedural,[3] rather than substantive, issue.[4] Opinion (2018) at 4; D.E. 128. Rule 42(b) provides, in relevant part, that "[f]or convenience, to avoid prejudice, or to expedite and

---

[3] Under the *Erie* doctrine, a federal court sitting in diversity applies federal procedural law and state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 71 (1938).

[4] To support this finding, Judge Clark cited to a Western District of Kentucky case for the proposition that "the conduct of discovery and bifurcation are matters of federal procedural law." *Riddle v. Royal Indem. Co.*, No. 3:05CV-540-S, 2007 WL 542389, at *1 (W.D. Ky. Feb. 16, 2007). Plaintiffs protest that "in disregarding the weight of New Jersey precedent, the February 6 Order relies upon several Kentucky cases." Pl. Brf. 2018 at 10. Plaintiffs' objection, however, appears not only wrong under *Erie*, but also surprising given that Plaintiffs cite to case law from other districts multiple times. *Id.* at 11.

7

economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Judge Clark also noted that under Rule 42(b) "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." Opinion (2018) at 4 (quoting *Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co.*, No. CIV.A. 03-5550, 2007 WL 188285, at *5 (D.N.J. Jan. 22, 2007)). Finally, Judge Clark explained that the moving party bears the burden of showing that bifurcation would serve judicial economy and not prejudice the parties. Opinion (2018) at 5 (quoting *Ortho-McNeil v. Teva Pharmaceuticals USA*, 2003 WL 25888720, at *2 (D.N.J. Jan. 28, 2003)).

Judge Clark held that Plaintiffs had not carried their burden of showing that bifurcation was warranted.[5] First, Judge Clark found that the age of the case, first filed in July 2014, gave the court "great pause in implementing a stay that will effectively double the length of discovery." Opinion (2018) at 6. While Judge Clark acknowledged that the age of the case could be partially attributed to the transfer of the case, he also noted that "this litigation has not been an example of cooperation or efficiency." *Id.* To that end, Judge Clark found that the "contentious nature of the relationship between the parties" was the second factor counseling against bifurcation. *Id.* The 2018 Opinion listed numerous docket entries evidencing disputes between the parties requiring

---

[5] Judge Clark held that "[a]s an initial matter, the Court notes that the arguments and supporting authority set forth by Plaintiffs in support of their request relate to the bifurcation of a bad faith claim in its entirety and do not support or address the propriety of Plaintiffs' present request for bifurcation of discovery." Opinion (2018) at 5; D.E. 128. In fact, in the context that Plaintiffs mistakenly seek to argue their appeal, whether to bifurcate entirely, the Third Circuit has been clear that the decision to bifurcate is within a district judge's sound discretion. *In re Bayside Prison Litig.*, 157 F. App'x 545, 547 (3d Cir. 2005). "We have recognized that 'the trial judge is entrusted with discretion [to decide case management issues, such as bifurcation] because he is in a far better position than we to appraise the effect of a particular procedure on the parties.'" *Id.* (quoting *Reed v. Philadelphia, Bethlehem & New England R.R. Co.*, 939 F.2d 128, 133 (3d Cir. 1991)).

court intervention. *Id.* Further, Judge Clark predicted that given the parties' prior behavior it seemed "certain" that bifurcation would lead to several disputes of whether a discovery request or deposition question went to an issue of bad faith or coverage. *Id.* at 8. Finally, Judge Clark found that there would be "a significant overlap in the discovery needed for the parties' coverage claims and for Defendant's bad faith claim." *Id.* at 7-8. Therefore, Judge Clark concluded "that bifurcating and staying bad faith discovery in this matter would be an affront to judicial economy and will not serve the interests of the parties or the Court." *Id.* at 9.

Here, the Court finds that Judge Clark's denial of Plaintiffs' motion to bifurcate and stay Defendant's bad faith counterclaim was neither clearly erroneous nor contrary to law. Rule 42 provided Judge Clark with the discretion to decide this motion based on considerations of judicial economy, efficiency, and fairness. The 2018 Opinion illustrates that Judge Clark undertook a detailed analysis of the applicable case law and facts before deciding to deny the motion. Judge Clark was best positioned to conduct this analysis as the magistrate handling all discovery matters in this case since March 2016. Judge Clark did not err. Plaintiffs' appeal of the 2018 Opinion is denied.

### IV. CONCLUSION

For the reasons stated above, and for good cause shown,

**IT IS** on this 12th day of April, 2018,

**ORDERED** that Plaintiffs' appeals (D.E. 110 & 133) are **DENIED**.

John Michael Vazquez, U.S.D.J.